**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STATE OF MARYLAND *et al.*,<br><br>                        Plaintiffs,<br>      v.<br><br>UNITED STATES DEPARTMENT OF<br>EDUCATION *et al.*,<br><br>                    Defendants. | **NO. 1:17-cv-2139-KBJ** |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT[1]**

The Plaintiffs respectfully submit this supplemental memorandum to address two issues that were raised during oral argument on the parties' summary judgment motions but which had not been addressed in briefing. Specifically, the Court questioned the States as to whether the Department's announcement that it had distributed the Draft GE Completers Lists the day before the hearing rendered Count III of the Complaint moot or unripe. Because the States did not have the opportunity to address this question in briefing, they discuss it here. In addition, the Court questioned the States as to whether the potential loss of a benefit provided by the Gainful Employment Rule (the "Rule") satisfied the injury requirement for Article III standing. This issue was not raised by the

---

[1] On June 18, 2018, Defendants caused to be published in the Federal Register a new delay notice that further delays the deadline for schools to comply with the disclosure requirements in the Rule relating to promotional materials and direct notifications to students about to enroll, from the already-delayed deadline of July 1, 2018, to July 1, 2019. The Plaintiffs intend to file a motion for leave to file an amended complaint that includes this delay notice in the APA violations asserted by the Plaintiffs.

Defendants in their briefs on the parties' motions, and therefore the States address it in this supplemental memorandum.

## I.  THE DEPARTMENT'S RELEASE OF THE DRAFT GE COMPLETERS LIST NEITHER MOOTS THE PLAINTIFFS' UNREASONABLE DELAY CLAIM NOR MAKES IT UNRIPE.

The Department provided the Draft Completers Lists to covered institutions on April 30, 2018, just one day before the hearing in this matter.[2] Defendants then argued at the hearing that the States' unreasonable delay claim was moot, because the Department had now complied with its obligation to provide these lists. *See* Transcript, Dkt. No. 61, at 93:15-18 (May 1, 2018) ("Tr."). Plaintiffs, however, have asserted throughout this case that the Department violated § 706(1) of the APA by failing to take two separate and discrete actions: issuing the Draft Completers Lists *and* calculating the debt-to-earnings rates. *See* Compl. ¶ 121.

In response to questioning from the Court about the debt-to-earnings rates, the Department argued that the States' claim was not ripe, because the 45-day period for institutions to provide corrections to the Draft GE Completers Lists "has not passed," which was a requirement before the Department could issue debt-to-earnings rates. *See* Tr. 114:21-24. First, this argument fails because the 45-day corrections period expired on June 13, 2018 and the debt-to-earnings rates have not been issued. As such, even if Defendants' argument were correct, Plaintiffs' claim would no longer be unripe. Second, and more importantly, the Department's argument on ripeness ignores the fact that the

---

[2] *See Gainful Employment Electronic Announcement #114 – Distribution of Draft GE Completers Lists and 45-Day Corrections Period: April 30 to June 13, 2018* (April 27, 2018), *available at* https://ifap.ed.gov/eannouncements/042718GEAnn114Distrib DraftGEComplList45DayCorrectPer.html.

delay of the issuance of the debt-to-earnings rates is *already* unreasonable and therefore *already* a violation of the APA. The Department's belated compliance with its obligation to provide Draft Completers Lists nether excuses its unreasonable delay in calculating the debt-to-earning rates nor demands that this Court permit the Department an unlimited period of time to publish the debt-to-earnings rates. Notably, at the time it was relying on the 45-day correction period to justify its argument that "the time has not passed," the Department did not provide a date by which it intended to release the debt-to-earnings rates after the expiration of the corrections period. In fact, the debt-to-earnings rates are already six months delayed, based upon when they were issued in 2017. The issuance of the Draft GE Completers Lists on the day before the hearing and the refusal of the Department to provide a date when it will publish debt-to-earnings rates underscores the fact that the Department is unreasonably delaying its compliance with the Rule and will continue to do so unless ordered otherwise by this Court.

In actions involving delay of an administrative action, "the lack of a final order by the agency, which might otherwise engender a question about ripeness, does not preclude this court's jurisdiction." *Muwekma Tribe v. Babbitt*, 133 F. Supp. 2d 30, 34 (D.D.C. 2000). Therefore, a claim pursuant to § 706(1) of the APA is ripe when the delay is unreasonable, because if the failure to act could never trigger judicial review, "agencies could effectively prevent judicial review of their policy determinations by simply refusing to take agency action." *Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001). Due to the length of time that has elapsed for the non-discretionary act of calculating debt-to-earnings rate that must be done "for each award year," 34 C.F.R. § 668.405(a),

and the lack of reasonableness (or any articulated basis)[3] for the delay, the Plaintiffs' claim that the Department is still in violation of § 706(1) of the APA is not affected by the Department's issuance of the Draft GE Completers Lists. Therefore, Plaintiff's claim is ripe.

The Department is already in violation of § 706(1), and it has shown that it will not carry out its obligations under the Rule unless spurred by the prospect of judicial intervention. Plaintiffs respectfully request this Court issue an order setting a date certain by which the Department should issue debt-to-earnings rates. In the alternative, the Plaintiffs respectfully request that the Court schedule a status conference or hearing to determine when the Department intends to issue debt-to-earnings rates and whether the Department's proposed date would further violate the APA.

## II.   BY DEPRIVING THEM OF THE BENEFITS OF THE RULE, THE DEPARTMENT HAS INJURED THE STATES.

During argument, the Court questioned the States on the assertion that they can establish injury by showing they are worse off than they would be if the Department enforced the Rule – even though the Rule has never been fully implemented. *See* Tr. at 11:8-19 (discussing appropriate "baseline" for measuring the States' injury). As the D.C. Circuit has recognized, "the historical baseline is not the only possible measure of injury." *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Engineers*, 663 F.3d 470 (D.C. Cir. 2011). So the fact that the Rule has not been fully implemented is irrelevant; if the States can show that they are worse off than they would otherwise be if the

---

[3] By providing the Draft GE Completers Lists, the Department seems to have abandoned its argument that it was "reasonable" to wait until it completed adjudication of alternative earnings appeals for the initial year of debt-to-earnings rates. *See* Def. Opp. at 39.

Department complied with its legal obligations, they can demonstrate injury. *See*

*National Environmental Development Association's Clean Air Project v. E.P.A.*, 752

F.3d 999 (D.C. Cir. 2014). There the EPA contested the petitioner association's standing

to challenge an EPA memorandum, arguing that the association's members

"face ... nothing more than the status quo they faced prior to the memorandum." *Id.* at

1006 (alteration in original). The Court rejected this argument, holding, "[t]he

consequences of the agency's action must, for causation purposes, be assessed not by

reference to the status quo ante but instead to other actions EPA could have taken." *Id.* To

establish standing, the Court continued, "[p]etitioner need not show that the

[memorandum] rendered them worse off than the status quo ante." Rather, "They may

alternatively show that, *had the EPA taken the course of action that they claim the law

required, they would have been better off*." *Id.* (emphasis added).

Here, the States would be better off if the Department of Education had "taken the

course of action … the law required" and enforced the Rule. Had the Department done

so, the States would have saved money through better allocation of their own funding for

colleges and universities;[4] they would have enjoyed increased enrollment at public and

community educational institutions;[5] and they would have benefited from a reduced need

---

[4] The Department previously determined that, as a result of the Rule, "State and local postsecondary education funding will be allocated more efficiently to higher-performing programs" and that States would benefit "from improved oversight of their investments in postsecondary education." *Program Integrity: Gainful Employment*, 79 Fed. Reg. 64,890, 65,080 (Oct. 31, 2014).

[5] *See Where Do Students Go When For-Profit Colleges Lose Federal Aid?*, Stephanie R. Cellini, Rajeev Darolia, Lesley J. Turner, National Bureau Of Economic Research Working Paper No. 22967, https://www.nber.org/papers/w22967 (Issued in December 2016, Revised in April 2018) (The revised draft finds "[o]n average, sanctioned for-profit institutions experienced a 40 percent decline in their own enrollment

to conduct investigations into fraudulent activities at schools subject to the Rule.[6] So even if, as the Court suggested, *see* Tr. 25:25-26:1, the States are now in the same position they were before the Rule was ever promulgated, the fact that they "would have been better off" if the Department had followed the law and enforced the Rule established a legally cognizable injury. *National Environmental Development Association's Clean Air Project*, 752 F.3d at 1006.

The States' argument finds further support in decisions of the D.C. Circuit and this Court addressing the standing of proposed defendant-intervenors. In the D.C. Circuit, parties seeking to intervene as defendants must establish standing and therefore "must show injury in fact, causation, and redressability." *Crossroads Grassroots Policy Strategies (GPS) v. Fed. Election Comm'n*, 788 F.3d 312, 316 (D.C. Cir. 2015) ("[W]here a party tries to intervene as another defendant, we have required it to demonstrate Article III standing . . . . The standing inquiry for an intervening-defendant is the same as for a plaintiff: the intervenor must show injury in fact, causation, and redressability.").

---

in the five years following sanction receipt. An additional for-profit sanction increases each local community college's enrollment by about 6 percent.").

[6] *See* 79 Fed. Reg. at 74,907 ("Several State Attorneys General have sued for-profit institutions to stop these fraudulent marketing practices, including manipulation of job placement rates."); *id.* at 64,907-08 (discussing State-led investigations leading to "accumulation of evidence of misrepresentations to consumers by for-profit institutions regarding their outcomes provides a sound basis for the Department to conclude that a strong accountability framework for assessing outcomes by objective measures is necessary to protect consumers from enrolling and borrowing more than they can afford to repay"); *cf.* Order (Dkt. No. 71), *Accrediting Council for Independent Colleges and Schools v. DeVos et al.*, No. 16-2448 (D.D.C.) ("*ACICS*"), at 4-6 (finding that intervenor states had standing based on argument that, if court ruled for plaintiffs, "institutions of higher education will not be subjected to proper monitoring, thus, forcing the States to expend considerable resources pursuing claims against institutions of higher education that violate the States' respective consumer protection laws.").

In *Crossroads GPS*, the D.C. Circuit surveyed its cases addressing intervenor standing and concluded that they "generally found a sufficient injury in fact where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit." *Id.* at 317. This principle applies with equal force here: the States benefit from the Rule, and the Department's failure to enforce it has deprived them of these benefits. Judge Walton relied on *Crossroads GPS* in finding that many of the same states had standing to intervene as defendants in a case filed by the Accrediting Council for Independent Colleges and Schools challenging the Department's decision to revoke its recognition. *See* Order (Dkt. No. 71), *ACICS*, at 4-6. The injury asserted by the intervening states in that case – and accepted by the court – was largely identical to one asserted here: that the challenged action would "forc[e] the States to expend considerable resources pursuing claims against institutions of higher education that violate the States' respective consumer protection laws." *Id.* at 4.

Therefore, because the States are worse off than they would be if the Department had carried out its obligations under the Rule, they have suffered injuries that are sufficient to establish Article III standing.

Respectfully submitted,

Dated: June 19, 2018                      FOR THE STATE OF MARYLAND
                                          BRIAN E. FROSH
                                          ATTORNEY GENERAL

                                    By:   */s/ Christopher J. Madaio*
                                          Christopher J. Madaio
                                          Assistant Attorney General
                                          Office of the Attorney General
                                          Consumer Protection Division
                                          200 St. Paul Place, 16th Floor
                                          Baltimore, MD 21202
                                          (410) 576-6585
                                          Cmadaio@oag.state.md.us


                                          FOR THE COMMONWEALTH OF
                                          PENNSYLVANIA
                                          JOSH SHAPIRO
                                          ATTORNEY GENERAL

                                    By:   */s/ Michael J. Fischer*
                                          Michael J. Fischer
                                          Chief Deputy Attorney General
                                          John M. Abel
                                          Jesse Harvey
                                          Senior Deputy Attorneys General
                                          Pennsylvania Office of Attorney
                                          General
                                          Strawberry Square
                                          Harrisburg, PA 17120
                                          (215) 560-2171
                                          mfischer@attorneygeneral.gov

PEOPLE OF THE STATE OF
ILLINOIS, by LISA MADIGAN
ATTORNEY GENERAL OF
ILLINOIS

By: */s/ Joseph Sanders*_____
    Joseph Sanders
    Gregory W. Jones
    Assistant Attorneys General
    Consumer Fraud Bureau
    Office of the Illinois Attorney General
    100 W. Randolph St., 12th Fl.
    Chicago, IL 60601
    312-814-6796 (Joseph)
    312-814-4987 (Gregory)
    Fax: 312-814-2593
    jsanders@atg.state.il.us
    gjones@atg.state.il.us

FOR THE COMMONWEALTH OF
MASSACHUSETTS
MAURA HEALEY
ATTORNEY GENERAL

By: */s/ Yael Shavit*___
    Yael Shavit
    Assistant Attorney General
    Office of the Massachusetts Attorney
    General
    One Ashburton Place
    Boston, MA 02108
    (617) 963-2197
    yael.shavit@state.ma.us

FOR THE STATE OF CALIFORNIA
XAVIER BECERRA
CALIFORNIA ATTORNEY
GENERAL

By: */s/ Bernard A. Eskandari*
    Bernard A. Eskandari
    Deputy Attorney General
    300 South Spring Street, Suite 1702
    Los Angeles, California 90013
    (213) 897-2652
    bernard.eskandari@doj.ca.gov

FOR THE STATE OF
CONNECTICUT
GEORGE JEPSEN
ATTORNEY GENERAL

By: */s/ Joseph J. Chambers*
    Joseph J. Chambers
    Assistant Attorney General
    Connecticut Office of Attorney General
    PO Box 120
    Hartford, CT 06141-0120
    (860) 808-5270
    joseph.chambers@ct.gov

FOR THE STATE OF DELAWARE
MATTHEW P. DENN
ATTORNEY GENERAL

By: */s/ Christian Douglas Wright*
    Christian Douglas Wright
    Director of Consumer Protection
    Deputy Attorney General
    Delaware Department of Justice
    820 N. French Street
    Wilmington, DE  19801
    (302) 577-8400
    christian.wright@state.de.us

FOR THE DISTRICT OF COLUMBIA
KARL A. RACINE
ATTORNEY GENERAL

By: */s/ Philip Ziperman*
    Philip Ziperman
    Assistant Attorney General
    Attorney General for the District of
    Columbia
    441 4th Street, N.W., 6th Floor
    Washington, DC 20001
    (202) 442-9886
    Philip.Ziperman@dc.gov

FOR THE STATE OF HAWAII
RUSSELL A. SUZUKI
ATTORNEY GENERAL OF HAWAII

By:  */s/ Bryan C. Yee*
       Bryan C. Yee
       Deputy Attorney General
       425 Queen Street
       Honolulu, Hawaii 96813
       (808) 586-1180
       bryan.c.yee@hawaii.gov

FOR THE STATE OF IOWA
THOMAS J. MILLER
ATTORNEY GENERAL

By:  */s/ Jessica Whitney*
       Jessica Whitney
       Director - Consumer Protection
       Office of the Attorney General of Iowa
       1305 E. Walnut St.
       Des Moines, Iowa 50319
       (515) 281-8772
       Jessica.Whitney@iowa.gov

FOR THE STATE OF MINNESOTA
LORI SWANSON
ATTORNEY GENERAL

By:  */s/ Jason Pleggenkuhle*
       Jason Pleggenkuhle
       Assistant Attorney General
       Bremer Tower, Suite 1200
       445 Minnesota Street
       St. Paul, MN 55101
       (651) 757-1147 (Voice)
       (651) 282-5832 (Fax)
       jason.pleggenkuhle@ag.state.mn.us

FOR THE STATE OF NEW YORK
BARBARA D. UNDERWOOD
ATTORNEY GENERAL OF NEW
YORK

By: */s/ Jane M. Azia*
Jane M. Azia
Chief, Bureau of Consumer Frauds and
Protection
120 Broadway, 3rd floor
New York, NY 10271
Tel.: (212) 416-8727
Jane.azia@ag.ny.gov

FOR THE STATE OF NORTH
CAROLINA
JOSH STEIN
ATTORNEY GENERAL OF NORTH
CAROLINA

By: */s/ Matt Liles*
Matt Liles
Assistant Attorney General
North Carolina Department of Justice
114 W. Edenton St.
Raleigh, NC  27603
P.O. Box 629
Raleigh, NC  27602
(919) 716-0141
mliles@ncdoj.gov

FOR THE STATE OF OREGON
ELLEN F. ROSENBLUM
ATTORNEY GENERAL

By: */s/ Andrew Shull*
Andrew Shull
Assistant Attorney General
Oregon Department of Justice
1162 Court Street, NE
Salem, OR 97301
(503) 934-4400
Andrew.shull@doj.state.or.us

FOR THE STATE OF RHODE
ISLAND
PETER F. KILMARTIN
ATTORNEY GENERAL

By: */s/ Neil F.X. Kelly*_____
      Neil F.X. Kelly
      Deputy Chief, Civil Div.
      Assistant Attorney General
      Edmund F. Murray, Jr.
      Special Assistant Attorney General
      Rhode Island Department of Attorney
      General
      150 South Main Street
      Providence, Rhode Island 02903
      (401) 274-4400 ext. 2284
      nkelly@riag.ri.gov
      emurray@riag.ri.gov

FOR THE STATE OF VERMONT
THOMAS J. DONOVAN, JR.
ATTORNEY GENERAL

By: */s/ Christopher J. Curtis*
      Christopher J. Curtis
      State of Vermont
      Office of the Attorney General
      Chief, Public Protection Division
      109 State St.
      Montpelier, VT 05609
      (802) 828-5586
      christopher.curtis@vermont.gov

FOR THE COMMONWEALTH OF
VIRGINIA
MARK R. HERRING
ATTORNEY GENERAL

By: */s/ Samuel T. Towell*
Samuel T. Towell
Deputy Attorney General, Civil
Litigation
Cynthia E. Hudson
Chief Deputy Attorney General
Barbara Johns Building
202 N. Ninth St.
Richmond, Virginia 23219
(804) 786-6731
stowell@oag.state.va.us

FOR THE STATE OF WASHINGTON
ROBERT W. FERGUSON
ATTORNEY GENERAL

By: */s/ Jeffrey T. Sprung*
Jeffrey G. Rupert
Chief, Complex Litigation Division
Jeffrey T. Sprung (D.C. Bar No.:
384880)
Benjamin J. Roesch
Assistant Attorneys General
Office of the Washington Attorney
General
1125 Washington St. SE
P.O. Box 40100
Olympia, WA 98504
(206) 326-5492 (Sprung)
jeffreyr2@atg.wa.gov
jeff.sprung@atg.wa.gov
benjaminr@atg.wa.gov
cynthiaa@atg.wa.gov

**CERTIFICATE OF SERVICE**

I certify that on June 19, 2018, I caused a copy of the foregoing Supplemental Memorandum In Support Of Plaintiffs' Motion For Summary Judgment to be filed electronically and that these documents are available for viewing and downloading from the ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ Christopher J. Madaio*
Christopher J. Madaio