IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| STATE OF MARYLAND, et al., ) | |
| ) | Civil Action No. 1:17-2139 (KBJ) |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES DEPARTMENT OF ) | |
| EDUCATION, and ELIZABETH DEVOS, in her ) | |
| official capacity as Secretary of Education, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL MEMORANDUM**

Defendants the U.S. Department of Education ("Department") and Elizabeth DeVos, in her official capacity as Secretary of Education (collectively, "Defendants"), submit this response to the States' supplemental memorandum. As set forth below, nothing in the supplemental memorandum calls into question the conclusion, discussed at length in Defendants' prior briefing and at the May 1, 2018 hearing, that the States lack standing to bring this action. While it may be appropriate in some cases to evaluate the plaintiff's asserted injury by reference to a benefit that the plaintiff would have received but for the challenged agency action, here the Department has never completed a full cycle of implementing the gainful employment regulations promulgated in its 2014 Final Rule. There is no clear point of comparison here because it is unknown how States would have been affected if the 2014 Final Rule had been implemented in the manner that the States would have preferred—particularly when the direct cause of the States' asserted injuries would necessarily be the actions of schools and students, who qualify as independent third parties.

Moreover, the States also fail to show that Count III of their Complaint presents a live case or controversy when the Department has now provided schools with Draft GE Completers Lists—the only aspect of the Department's process for calculating debt-to-earnings ("D/E") rates that was ripe for challenge at the time the States filed suit. There is no dispute that the States' challenge of unreasonable delay with respect to the Draft GE Completers Lists is moot. The next step in the D/E rate calculation process requires the Social Security Administration ("SSA") to provide earnings data. That step was not ripe for challenge at the time the Complaint was filed, nor can an unreasonable delay claim be leveled at the Department in order to compel SSA action. The States' suggestion that the Court should enter a broad injunction that would require the Court's ongoing oversight, step-by-step through the D/E rate calculation process, up to and including the issuance of final D/E rates, is contrary to what the APA allows. Thus, even if the Court concludes the States have standing, Count III of the States' Complaint should be dismissed as moot.

I. **THE STATES LACK STANDING DESPITE THEIR ATTEMPT TO SHOW INJURY RELATIVE TO A "BASELINE" THAT IS ITSELF SPECULATIVE**

In their supplemental memorandum, the States submit additional argument on the question of their standing. In particular, the States identify as an issue raised by the Court during argument, the question of whether they must show an injury relative to the situation before the 2014 Final Rule existed (which the States call the "historical baseline"), or whether instead they can demonstrate injury by showing they are worse off, as a result of the Department actions that they challenge, than they would have been if the Department had implemented the 2014 Final Rule in the manner and on the timetable that they urge was required. *See* Pl. Supp. Mem. at 4.

While the States argue that the latter is the correct view, the two cases that they cite were very different from the case here because they discussed situations involving a clear and direct

causal link between the challenged agency action and the impact on the plaintiff, relative to whatever baseline was chosen. In *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Engineers*, 663 F. 3d 470 (D.C. Cir. 2011), the Court of Appeals suggested that the plaintiff might have established its standing to challenge a restriction in an Army Corps of Engineers nationwide permit if it had identified a lesser restriction that, in its view, the Army Corps should have imposed instead. *Id.* at 474. In that circumstance, the plaintiff's injury (the relatively greater restriction) would be the direct result of the challenged agency action. However, the Court ultimately concluded that the plaintiff lacked standing because the injury the plaintiff actually asserted—uncertainty about whether upland ditches might be subject to Clean Water Act penalties—had already existed before the permit and was not fairly traceable to the agency's issuance of the permit. *See id.* In *Nat'l Envtl. Dev. Ass'n's Clean Air Act Project v. EPA*, 752 F.3d 999 (D.C. Cir. 2014), the Court of Appeals held that the plaintiff had standing to challenge EPA's implementation of a Sixth Circuit decision when EPA's implementation directly and immediately resulted in an additional regulatory burden on the plaintiff's members who operated both within and outside the Sixth Circuit, relative to those faced by companies wholly within the Sixth Circuit. *See id.* at 1006.

    The import of the Court of Appeals' discussions in those two cases is that there may be situations where it is clear what the impact on a plaintiff would have been, had the defendant agency acted in the way that the plaintiff asserts it should have. In those situations, a plaintiff may be able to establish standing based on the difference in impact between what the agency did, and what the plaintiff asserts it should have done instead.

    But here, changing the baseline cannot help the States establish standing because the relative circumstances at the States' proposed baseline is a matter of pure speculation. As

Defendants have previously explained, the actual impact on States, if the Department had implemented the 2014 Final Rule as the States suggest it should have, cannot be gauged. The States, in their supplemental brief, make confident assertions regarding how "the States would be better off" by saving money, having increased public higher education enrollments, and having fewer fraud investigations at schools. Pl. Supp. Mem. at 5-6. However, Defendants have already refuted these assertions. *See* Def. Cross-MSJ Mem. at 21-25; Def. Reply at 3-8.

In particular, Defendants have explained that the States have failed to establish with particularity what would have happened had the Department *not* extended schools' deadlines to provide disclosures under 34 C.F.R. § 668.412(d) and (e); had it *not* made the changes to alternate earnings appeals set forth in the July 5 and August 18, 2017 Federal Register announcements; and had it provided 2017 GE Completers Lists to schools earlier. Indeed, because any impact on states would be the direct result of the independent actions of third parties—schools and students—the injuries the States allege are not fairly traceable to any action of the Department. Moreover, Defendants have shown that the States' assertions that they would have benefited financially if the Department had acted differently are not well supported; rather, increased student enrollments at public schools, even if they occurred as the States predict, could well impose a financial and logistical burden on states rather than a benefit. *See* Def. Reply at 4, 7 (citing 2014 Final Rule, 79 Fed. Reg. 63890, 65081). And the States have not provided substantial evidence that their budget for fraud investigations would have decreased to any degree if the Department had acted in accord with the States' preferences.

The States go further in their attempt to rehash this point by citing an unpublished decision in this District allowing states to intervene as the Department's co-defendants in a case brought by an accrediting agency, challenging its loss of accreditation. *See* Pl. Supp. Mem. at 6

(citing Order of Aug. 31, 2017, *Accrediting Council for Indep. Colls. & Schs*. ("*ACICS*") *v. DeVos*, No. 16-2448 (D.D.C.)). There, Judge Walton reasoned that the failure of the plaintiff accrediting agency ACICS to provide an accurate assessment of the schools to which it granted accreditation could cause an injury to the state-intervenors' fraud enforcement efforts. Order of Aug. 31, 2017, at 5. But the Court in *ACICS* pointed to direct evidence that the States had provided, showing the link between ACICS's "alleged accrediting lapses with respect to for-profit colleges engaged in fraudulent or deceptive conduct" and state investigations of those same colleges. Order of Aug. 31, 2017, at 5. Here, no similar showing can be made – for one thing because no school has lost Title IV funding under the 2014 Final Rule, and the States cannot purport to know what programs, if any, might have been discontinued by schools due to the publication of the first year of GE rates. The States also cannot determine what programs would have lost Title IV funding under their hypothesized alternative conditions, nor can they know whether their enforcement efforts against a particular school would have been impacted by that hypothetical loss of Title IV funding.

The States' "baseline" argument therefore should be rejected, and the Court should dismiss the States' claims in their entirety for lack of standing.

## II.    COUNT III OF THE STATES' COMPLAINT NO LONGER PRESENTS A LIVE CASE OR CONTROVERSY

In Count III of their Complaint, the States asserted that "[t]he Department's failure to carry out its obligation to provide the Draft GE Completers Lists to institutions" was an "unlawful withholding of action and/or an unreasonable delay of action" under 5 U.S.C. § 706(1). Compl. ¶ 119. They claimed that this alleged withholding and/or delay would in turn cause an unreasonable withholding and/or delay of the Department's issuance of debt-to-earnings rates. *Id.* ¶¶ 120-121.

5

After briefing on the parties' cross-motions for summary judgment was completed, and shortly before the scheduled May 1, 2018 hearing, the Department announced that it would distribute Draft GE Completers Lists to schools by April 30, 2018, and that the 45-day period for schools to submit corrections would end on June 13, 2018. *See* Electronic Announcement ("EA") #114 (Apr. 27, 2018), at 1.

As explained at the hearing, the Department's issuance of Draft GE Completers Lists renders the States' claim moot insofar as the States sought to compel the Department to issue those Lists—which is the only relief available under § 706(1). *See Gomez v. Nielsen*, 301 F. Supp. 3d 91, 95 (D.D.C. 2018) (plaintiff asylum applicant's claim of unreasonable delay in consideration of asylum application became moot after his asylum interview was scheduled); *Albra v. Bd. of Trustees of Miami Dade Coll.*, 296 F. Supp. 3d 181, 185 n.4 (D.D.C. Feb. 15, 2018) (to extent plaintiff's § 706(1) claim was based on "any delay by [the Department] in enforcing" certain provisions of an agreement with the plaintiff's school, "this aspect of his claims is rendered moot by [the Department's] September 11, 2017 notice" indicating it had found the school in compliance with the agreement); *Howard v. United States*, 949 F. Supp. 2d 54, 57 (D.D.C. 2013) (plaintiff's APA claim against the Department alleging unlawful refusal to discharge his student loans was rendered moot when the Department discharged plaintiff's student loans).

In their supplemental brief, the States do not dispute that their § 706(1) claim in Count III is moot with respect to the issuance of Draft GE Completers Lists. Instead, the States rehash arguments already raised in their cross-opposition and reply brief, focusing on the notion that their Complaint raised a separate § 706(1) challenge regarding the Department's failure to calculate D/E rates. *See* Pl Supp. Br. at 2 (citing Compl. ¶ 121); *cf.* Pl. Cross-opp & Reply [ECF

39], at 20-21 (making the same argument). As in their prior brief, the States again assert that the Department has unreasonably delayed its issuance of D/E rates. *See* Pl. Supp. Br. at 3-4; *cf.* Cross-opp & Reply at 23-25.

Defendants' previous response to this argument continues to apply. *See* Def. Cross-reply [ECF 42], at 18-21. As Defendants explained, because the Department's issuance of D/E rates is the culmination of a multi-step process, as set forth in 34 C.F.R. § 668.405(a), and some of those steps must be taken by schools and by the Social Security Administration ("SSA") rather than by the Department, a § 706(1) challenge with respect to the D/E rates is inappropriate. Any delay by the Department in issuing D/E rates cannot be deemed unreasonable when prerequisite steps in the process have yet to be completed. If the Court were to hold otherwise, it would be put in the position of exercising continuing oversight of the Department's (and schools' and the SSA's) progress every step of the way through § 668.405(a), and that is exactly what the Supreme Court held, in *Norton v. SUWA*, 542 U.S. 55 (2004), was "not contemplated by the APA." *Id.* at 67. Indeed, despite the States' argument in briefing, the States' Complaint appeared to recognize that, as of the time of filing, the States could only raise a § 706(1) challenge with respect to the Draft GE Completers Lists because that was the only step in the process that was then pending. *See* Compl. ¶¶ 117-120 (recognizing that the Department's provision of the Draft GE Completers Lists to schools would "begin the process" of determining D/E rates and characterizing any later delay in issuing D/E rates as a result of the challenged delay in providing Draft GE Completers Lists).

The only additional argument with respect to Count III raised in the States' supplemental brief attempts to respond to the Court's observation at the hearing that any challenge to later steps in the D/E rate calculation process appeared to be unripe. The States now argue that their

purported claim of delay regarding the D/E rates is "no longer . . . unripe" because the 45-day period for schools to submit corrections to the Draft GE Completers Lists has expired, as of June 13, 2018. Pl. Supp. Mem. at 2. However, like standing, "[r]ipeness is to be determined at the time the complaint is filed." *Chamber of Commerce v. Nat'l Labor Relations Bd.*, 118 F. Supp. 3d 171, 186–87 (D.D.C. 2015). The States cannot simply file suit prematurely and then reassert their claim of unreasonable delay every time another step in the D/E rate calculation process is completed.

Even more importantly, the States ignore that there are still a number of other steps that must be completed under § 668.405(a) before the Department could issue D/E rates. Indeed, after the 45-day period for schools to submit corrections to the Draft GE Completers Lists has passed, the next step identified in § 668.405(a) is a step that requires action by the SSA. *See* 34 C.F.R. § 668.405(a)(3) (indicating that the SSA will provide "the mean and median annual earnings of the students" on the GE Completers Lists). Because the SSA is not a defendant in this case, and because § 668.405 imposes no time limit on the SSA's provision of earnings data, the States cannot plausibly assert a § 706(1) claim here with respect to this next step of the D/E rate calculation process. By the same token, however, the States cannot leapfrog over this step or later steps in the process by claiming unreasonable delay at the last step when some earlier steps have not even begun. After all, after the SSA's provision of earnings data, the Department will use that data to calculate draft D/E rates and will provide those draft rates to schools. 34 C.F.R. § 668.405(a)(4). The schools then may challenge the accuracy of the loan debt information that the Department used for those draft calculations. *Id.* § 668.405(a)(5). The fact that the deadline for schools to submit corrections to the Draft GE Completers List has now passed therefore does not suggest that the States can now proceed with a § 706(1) claim. On the contrary, the passing

of that deadline only shows that the D/E rate calculation is proceeding apace without the judicial oversight that the States seek to compel. The Court should dismiss Count III as moot.

Dated: July 3, 2018                                  Respectfully Submitted,

                                                     CHAD A. READLER
                                                     Acting Assistant Attorney General
                                                     JESSIE K. LIU
                                                     United States Attorney
                                                     MARCIA BERMAN
                                                     Assistant Director, Federal Programs Branch

                                                     /s/ Kathryn L. Wyer
                                                     KATHRYN L. WYER
                                                     Trial Attorney
                                                     United States Department of Justice
                                                     Civil Division, Federal Programs Branch
                                                     20 Massachusetts Avenue NW Room 7124
                                                     Washington, D.C. 20530
                                                     Tel.: (202) 616-8475
                                                     Fax: (202) 616-8470
                                                     Email: kathryn.wyer@usdoj.gov
                                                     *Attorneys for Defendants*