# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE OF MARYLAND *et al.*,<br><br>                              Plaintiffs,<br><br>            v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION *et al.*,<br><br>                              Defendants. | **NO. 1:17-cv-2139-KBJ** |

## PLAINTIFFS' SECOND SUPPLEMENTAL REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

The Plaintiff States respectfully submit this Second Supplemental Reply Memorandum in Support of their Motion for Summary Judgment. As the States explained in their previous memorandum, the Department's June 18, 2018, delay notice ("Third Delay Notice") represents one of the final steps in the Department's multi-year effort to gut the Gainful Employment Rule (the "Rule"). The Department has carried out this effort by unlawfully refusing to enforce the Rule on the books while simultaneously working behind the scenes to issue a new regulation repealing the Rule in its entirely. In its Response to Plaintiffs' Second Supplemental Memorandum (the "Response"), the Department does not dispute the States' characterization. Instead, it claims that its plan to do away with the Rule actually excuses its failure to enforce it now, because the harm resulting from its failure will be brief – even though, according to the Department, it has not actually made up its mind as to whether the Rule should be eliminated. The Department is wrong: its continued refusal to enforce the Rule only compounds the harm of its prior refusals. The Department's Third Delay Notice is based on the same flawed logic and thereby unlawful for the same reasons as its previous delays. Moreover, the Department should

not be rewarded for its piecemeal, dilatory tactics, which have delayed the progress of this litigation as well as the implementation of the Rule. Plaintiffs' Motion for Summary Judgment should be granted, the Delay Notices should be immediately vacated, and the Department should be required to carry out its legal responsibilities.

## I.      PLAINTIFFS HAVE STANDING TO CHALLENGE THE DELAY NOTICE

The Department again argues that the States lack standing because they have not suffered injury as a result of its refusal to enforce the Rule.[1] But the Department's actions have injured the States in at least three distinct ways:

First, as they have previously argued, the States' own educational institutions suffer decreased enrollment as a result of the Department's failure to enforce the Rule, as students who would otherwise attend state-sponsored schools instead attend underperforming, for-profit programs.[2] A recently updated study demonstrated that, when for-profit institutions are sanctioned through a loss of federal funding, state-supported community colleges enjoy a subsequent increase in enrollment. *See* Cellini, Stephanie, *et al.*, *Where Do Students Go When For-Profit Colleges Lose Federal Aid?*, National Bureau Of Economic Research Working Paper No. 22967, *available at* https://www.nber.org/ papers/w22967 (Dec. 2016; revised April 2018) (attached hereto as Exh. A).[3] So the Department's failure to enforce the Rule – including its

---

[1] The States have previously demonstrated that, in addition to the direct injuries they have suffered as a result of the Department's actions, they have also suffered injuries to their quasi-sovereign interests that give them *parens patriae* standing. *See, e.g.*, Plaintiffs' Reply Memorandum (Dkt. 40), at 7-8 (March 8, 2018). The States incorporate those arguments by reference and do not repeat them here.

[2] *See* Plaintiffs' Supplemental Memorandum in Support of their Motion for Summary Judgment (Dkt. 64), at 5 (June 19, 2018).

[3] The study's authors concluded: "On average, sanctioned for-profit institutions experienced a 40 percent decline in their own enrollment in the five years following sanction receipt. An additional for-profit sanction increases each local community college's enrollment by about 6

2

refusal to enforce the Rule's disclosure requirements that would provide students with the information they would need to avoid predatory for-profit programs – reduces enrollment at state-funded institutions, causing direct harm to the States in the form of lost tuition.

This harm is especially acute because the States' educational institutions are themselves regulated under the Rule. *See Regents of Univ. of California v. United States Dep't of Homeland Sec.*, 279 F. Supp. 3d 1011, 1034 n.9 (N.D. Cal. 2018) ("The public universities of California, Maryland, and Minnesota are branches of the states under state law."); *see also Am. Ass'n of Cosmetology Sch. v. DeVos*, 258 F. Supp. 3d 50, 68 (D.D.C. 2017) (finding that trade group representing regulated institutions has standing to challenge the Rule). State educational institutions that are subject to the Rule are injured when it is not fully and fairly enforced, because inadequate enforcement allows less effective, less scrupulous programs to gain an unfair advantage. In fact, when the Department issued its first (and, to date, only) set of debt-to-earnings rates, not a single community college program received a failing score – while 98% of the programs that did receive failing scores were offered by for-profit schools.[4] The Department's failure to enforce the Rule thus benefits these for-profit institutions that defraud students at the expense of their state-sponsored competitors.

Second, the States are injured because the Department's refusal to enforce the Rule forces them to devote more resources to investigating fraudulent for-profit education programs. The Department itself recognized that the States play an essential role in investigating and

---

percent. Across all community colleges within a local higher education market, the increase in enrollment, albeit small relative to community colleges' overall size, was enough to completely compensate for the sanctioned for-profit's enrollment decline." *Id.*

[4] *See* Kreighbaum, Andrew, "Overburdened with Debt," *Inside Higher Ed* (Jan. 10, 2017), *available at https://www.insidehighered.com/news/2017/01/10/federal-data-show-hundreds-vocational-programs-fail-meet-new-gainful-employment.*

uncovering the abuses of for-profit educational institutions, stating, "Several State Attorneys General have sued for-profit institutions to stop these fraudulent marketing practices, including manipulation of job placement rates," 79 Fed. Reg. at 64,907, and detailing numerous investigations and enforcement actions brought by States, *id.* at 64,907-08. By refusing to enforce the Rule, including its vital disclosure requirements, the Department is increasing the burden on the States, which are required to fill the gap and pursue these fraudulent institutions.

Finally, the States are injured because their own funds are at stake: they provide educational aid to students, and when students attend failing institutions, that money goes to waste. If the Department enforced the Rule's disclosure requirements, more students would choose to go elsewhere rather than attend failing institutions, and the States' funds would be better spent. In the Rule, the Department specifically noted that states would see a benefit "from improved oversight of their investments in postsecondary education" and that "State and local postsecondary education funding will be allocated more efficiently to higher-performing programs." 79 Fed. Reg. at 65,080.

## II.    THE THIRD DELAY NOTICE CONSTITUTES FINAL AGENCY ACTION

The Department argues that the Third Delay Notice postponing the disclosure deadline is not reviewable under the APA because it "does not qualify as final agency action." *See* Response at 6. There is no basis for this assertion.

There is nothing "tentative or interlocutory" about the Department's Third Delay Notice extending the deadline for programs to comply with the most important disclosure obligations under § 668.412, just as there was nothing "tentative or interlocutory" about the First Delay

Notice issued on July 5, 2017.[5] Instead, the effect of the Third Delay Notice is to eliminate, for an additional year, programs' obligation to comply with the two most significant disclosure obligations under the Rule. Although the Department asserts that the Third Delay Notice does not "mark the consummation of the agency's decision making process," this assertion rings hollow, especially in light of its admission that it intends to rescind the entire Rule. *See* Response at 6, 8. Regardless, staying lawful requirements of a regulation is "tantamount to amending or revoking a rule" and therefore constitutes final agency action. *Clean Air Council v. Pruitt*, 862 F.3d 1, 6 (D.C. Cir. 2017).

The Department attempts to distinguish *Clean Air Council* on the ground that the delay in this case does not "implicate health and safety," and it further claims that it would be "less clear what would be accomplished" by the implementation of the disclosures in the Gainful Employment Rule than the rule in *Clean Air Council*. *See* Response at 7-8. The Department's claims are both baseless and unsupported by its own actions. It points to no discussion (nor can it) in *Clean Air Council* that the delayed rule's impact on health and safety influenced the court's decision that it was a final agency action, and the Administrative Procedure Act provides no support for this argument. In any event, both the States and amici curiae have discussed in detail why the disclosures in this Rule provide meaningful information and therefore should be provided directly to students and in promotional materials.[6]  To claim that nothing would be

---

[5] *See* Program Integrity: Gainful Employment, Announcement of Applicable Dates; Request for Comments, 82 Fed. Reg. 30,975 (July 5, 2017) ("First Delay Notice").

[6] For instance, the Department itself acknowledged in the Rule "that some for-profit institutions have taken advantage of the lack of access to reliable information about [career training] programs to mislead students." 79 Fed. Reg. at 65,034. This understanding is supported by various examples in the administrative record, including the pervasive examples of recruiters hiding or misrepresenting information to students about the costs and outcomes of various schools. *See* Br. of Amici Curiae (Dkt. No. 38-1), at 11-14 (Mar. 1, 2018)

accomplished or that students would be confused by the "changes in where they are supposed to find relevant information" is baseless and contradicted by the Department's own findings.

## III.   THE THIRD DELAY NOTICE IS A SUBSTANTIVE CHANGE REQUIRING NOTICE AND COMMENT

The Department again asserts that the Third Delay Notice was procedural in nature and "not a substantive amendment of the 2014 Final Rule requiring notice and comment rulemaking." Response at 8. Contrary to the Department's claim, however, this Court recognized at the hearing that the disclosure requirements are exactly that – *a requirement* – and the Department has provided no meaningful response. *See* Tr. of  5/17/18 Hearing (Dkt. No. 81), at 105-6. Therefore, the Department must follow notice and comment procedures before delaying the disclosure requirements. *See Nat'l Venture Capital Ass'n v. Duke*, No. 17-1912, 2017 WL 5990122 at *7 (D.D.C. Dec. 1, 2017) (noting that the APA's notice and comment requirements apply with no less force when the agency seeks to delay or repeal a valid final rule); *Envtl. Defense Fund v. Gorsuch*, 713 F.2d 802, 817-18 (D.C. Cir. July 26, 1983) (postponement of permit process not an interpretative rule "[b]ecause of its substantive effect on the obligations of the owners of existing facilities and on the rights of the public").

The only new argument made by the Department in its Response is that any failure to undertake notice and comment rulemaking was harmless error, because it solicited and accepted comments after it delayed the disclosure requirements in July of 2017. *See* Response at 9. The Department provides no legal support for the notion that comments provided earlier eliminate the need to provide notice and the opportunity to comment on a subsequent proposal, nor could it: such a principle would create an enormous loophole in the APA's notice and comment requirement. And there is no reason to expect that the earlier comments the Department received – which were submitted after the Department had issued prior delay notices – represent the full

range of comments that would be submitted if the Department were to solicit input on a proposal *before* it was implemented.

## IV.     THE THIRD DELAY NOTICE IS ARBITRARY AND CAPRICIOUS

Finally, the Third Delay Notice is arbitrary and capricious and should be set aside under section 706 of the APA. *See* 5 U.S.C. § 706(2)(A). In promulgating a rule, an agency "must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).

The Third Delay Notice, like the previous two, is virtually devoid of any substantive analysis justifying the decision to continue refusing to implement the disclosure requirements. The Department claims that it offered a "reasonable basis" for its decision by stating that it "received conflicting information, including a comment suggesting that the information to be disclosed may be confusing to students.'" Response at 10 (quoting 83 Fed. Reg. at 28,178). The claim that a single comment "suggesting" that the mandatory disclosures under the Rule "may be confusing" justifies refusing to enforce the disclosure requirements for an full year is absurd. And if the Department truly believes that the disclosures are "confusing," it could have worked to modify them – but instead it delayed their implementation until it could jettison the Rule altogether.

Finally, the Department justifies the delay by pointing to the claim made in the NPRM – but not in the Delay Notice itself – that "many institutions no longer mail paper documents, and instead rely on web-based materials and electronic enrollment agreements." But the Rule does not require disclosure only through "paper documents"; it expressly allows the use of email as

well. *See* 34 C.F.R. § 668.412(e)(2(ii). And the original Rule explained in detail why the Department chose the specific disclosure methods permitted. *See* 79 Fed. Reg. at 64968-70. So the Department's assertion is factually incorrect, in addition to falling well short of providing a "reasonable basis" for its decision.

## CONCLUSION

For the reasons set forth above, the States' motion for summary judgment should be granted.

Dated: September 27, 2018      Respectfully submitted,

FOR THE STATE OF MARYLAND
BRIAN E. FROSH
ATTORNEY GENERAL

By:    */s/ Christopher J. Madaio*
Christopher J. Madaio
Assistant Attorney General
Office of the Attorney General
Consumer Protection Division
200 St. Paul Place, 16th Floor
Baltimore, MD 21202
(410) 576-6585
Cmadaio@oag.state.md.us

FOR THE COMMONWEALTH OF PENNSYLVANIA
JOSH SHAPIRO
ATTORNEY GENERAL

By:    */s/ Michael J. Fischer*
Michael J. Fischer
Chief Deputy Attorney General
John M. Abel
Jesse Harvey
Senior Deputy Attorneys General
Pennsylvania Office of Attorney General
Strawberry Square
Harrisburg, PA 17120
(215) 560-2171
mfischer@attorneygeneral.gov

PEOPLE OF THE STATE OF
ILLINOIS, by LISA MADIGAN
ATTORNEY GENERAL OF ILLINOIS

By:     */s/ Joseph Sanders*
        Joseph Sanders
        Gregory W. Jones
        Assistant Attorneys General
        Consumer Fraud Bureau
        Office of the Illinois Attorney General
        100 W. Randolph St., 12th Fl.
        Chicago, IL 60601
        312-814-6796 (Joseph)
        312-814-4987 (Gregory)
        Fax: 312-814-2593
        jsanders@atg.state.il.us
        gjones@atg.state.il.us

        FOR THE COMMONWEALTH OF
        MASSACHUSETTS
        MAURA HEALEY
        ATTORNEY GENERAL
By:
        */s/ Yael Shavit*
        Yael Shavit
        Assistant Attorney General
        Office of the Massachusetts Attorney General
        One Ashburton Place
        Boston, MA 02108
        (617) 963-2197
        yael.shavit@state.ma.us

        FOR THE STATE OF CALIFORNIA
        XAVIER BECERRA
        CALIFORNIA ATTORNEY GENERAL

By:     */s/ Bernard A. Eskandari*
        Bernard A. Eskandari
        Deputy Attorney General
        300 South Spring Street, Suite 1702
        Los Angeles, California 90013
        (213) 897-2652
        bernard.eskandari@doj.ca.gov

FOR THE STATE OF CONNECTICUT
GEORGE JEPSEN
ATTORNEY GENERAL

By:   */s/ Joseph J. Chambers*
      Joseph J. Chambers
      Assistant Attorney General
      Connecticut Office of Attorney General
      PO Box 120
      Hartford, CT 06141-0120
      (860) 808-5270
      joseph.chambers@ct.gov

FOR THE STATE OF DELAWARE
MATTHEW P. DENN
ATTORNEY GENERAL

By:   */s/ Christian Douglas Wright*
      Christian Douglas Wright
      Director of Consumer Protection
      Deputy Attorney General
      Delaware Department of Justice
      820 N. French Street
      Wilmington, DE  19801
      (302) 577-8400
      christian.wright@state.de.us

FOR THE DISTRICT OF COLUMBIA
KARL A. RACINE
ATTORNEY GENERAL

By:   */s/ Philip Ziperman*
      Philip Ziperman
      Assistant Attorney General
      Attorney General for the District of Columbia
      441 4th Street, N.W., 6th Floor
      Washington, DC 20001
      (202) 442-9886
      Philip.Ziperman@dc.gov

FOR THE STATE OF HAWAI'I
RUSSELL A. SUZUKI
ATTORNEY GENERAL OF HAWAII

By:   */s/ Bryan C. Yee*
      Bryan C. Yee
      Deputy Attorney General
      425 Queen Street
      Honolulu, Hawaii 96813
      (808) 586-1180
      bryan.c.yee@hawaii.gov

FOR THE STATE OF IOWA
THOMAS J. MILLER
ATTORNEY GENERAL

By:   */s/ Jessica Whitney*
      Jessica Whitney
      Director - Consumer Protection
      Office of the Attorney General of Iowa
      1305 E. Walnut St.
      Des Moines, Iowa 50319
      (515) 281-8772
      Jessica.Whitney@iowa.gov

FOR THE STATE OF MINNESOTA
LORI SWANSON
ATTORNEY GENERAL

By:   */s/ Jason Pleggenkuhle*
      Jason Pleggenkuhle
      Assistant Attorney General
      Bremer Tower, Suite 1200
      445 Minnesota Street
      St. Paul, MN 55101
      (651) 757-1147 (Voice)
      (651) 282-5832 (Fax)
      jason.pleggenkuhle@ag.state.mn.us

FOR THE STATE OF NEW YORK
BARBARA D. UNDERWOOD
ATTORNEY GENERAL OF NEW YORK

By:   */s/ Jane M. Azia*
Jane M. Azia
Chief, Bureau of Consumer Frauds and Protection
120 Broadway, 3rd floor
New York, NY 10271
Tel.: (212) 416-8727
Jane.azia@ag.ny.gov

FOR THE STATE OF NORTH CAROLINA
JOSH STEIN
ATTORNEY GENERAL OF NORTH CAROLINA

By:   */s/ Matt Liles*
Matt Liles
Assistant Attorney General
North Carolina Department of Justice
114 W. Edenton St.
Raleigh, NC  27603
P.O. Box 629
Raleigh, NC  27602
(919) 716-0141
mliles@ncdoj.gov

FOR THE STATE OF OREGON
ELLEN F. ROSENBLUM
ATTORNEY GENERAL

By:   */s/ Andrew Shull*
Andrew Shull
Assistant Attorney General
Oregon Department of Justice
1162 Court Street, NE
Salem, OR 97301
(503) 934-4400
Andrew.shull@doj.state.or.us

FOR THE STATE OF RHODE ISLAND
PETER F. KILMARTIN
ATTORNEY GENERAL

By:   */s/ Neil F.X. Kelly*
      Neil F.X. Kelly
      Deputy Chief, Civil Div.
      Assistant Attorney General
      Edmund F. Murray, Jr.
      Special Assistant Attorney General
      Rhode Island Department of Attorney General
      150 South Main Street
      Providence, Rhode Island 02903
      (401) 274-4400 ext. 2284
      nkelly@riag.ri.gov
      emurray@riag.ri.gov

FOR THE STATE OF VERMONT
THOMAS J. DONOVAN, JR.
ATTORNEY GENERAL

By:   */s/ Christopher J. Curtis*
      Christopher J. Curtis
      State of Vermont
      Office of the Attorney General
      Chief, Public Protection Division
      109 State St.
      Montpelier, VT 05609
      (802) 828-5586
      christopher.curtis@vermont.gov

FOR THE COMMONWEALTH OF VIRGINIA
MARK R. HERRING
ATTORNEY GENERAL

By:   */s/ Samuel T. Towell*
      Samuel T. Towell
      Deputy Attorney General, Civil Litigation
      Cynthia E. Hudson
      Chief Deputy Attorney General
      Barbara Johns Building
      202 N. Ninth St.
      Richmond, Virginia 23219
      (804) 786-6731
      stowell@oag.state.va.us

13

FOR THE STATE OF WASHINGTON
ROBERT W. FERGUSON
ATTORNEY GENERAL

By:  _/s/ Jeffrey T. Sprung_
    Jeffrey G. Rupert
    Chief, Complex Litigation Division
    Jeffrey T. Sprung (D.C. Bar No.: 384880)
    Benjamin J. Roesch
    Assistant Attorneys General
    Office of the Washington Attorney General
    1125 Washington St. SE
    P.O. Box 40100
    Olympia, WA 98504
    (206) 326-5492 (Sprung)
    jeffreyr2@atg.wa.gov
    jeff.sprung@atg.wa.gov
    benjaminr@atg.wa.gov
    cynthiaa@atg.wa.gov

**CERTIFICATE OF SERVICE**

I hereby certify that I have caused the foregoing document, and any attachments thereto, to be electronically filed with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system, and that all participants in the case will be served by the CM/ECF system.


Dated: September 27, 2018

/s/ Michael J. Fischer
Michael J. Fischer