UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE OF MARYLAND *et al.*,<br><br>                    Plaintiffs,<br>       v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION *et al.*,<br><br>                    Defendants. | **NO. 1:17-cv-2139-KBJ** |

**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**

Plaintiffs submit this notice to apprise the Court of three recent developments that have a direct impact on arguments asserted by the Defendants[1] in this case. These developments include: (1) A recent Ninth Circuit decision affirming states' standing to sue federal agency defendants; (2) the collapse of yet another large for-profit college chain with programs that failed the Gainful Employment Rule; and (3) the Department's failure to publish a replacement Gainful Employment Rule by November 1, 2018.

**1.  *California v. Azar***

On December 13, 2018, the United States Court of Appeals for the Ninth Circuit in *California v. Azar* affirmed the district court's holding that states had standing to sue federal agency defendants over regulations that would impose additional burdens on state-funded programs. No. 18-15144, 2018 WL 6566752, at *5-*8 (9th Cir. Dec. 13, 2018). A copy of the decision is attached as Exhibit A. There, in a case challenging interim final rules of the Departments of Health & Human Services, Labor, and the

---

[1] *See, e.g.,* Dck. No. 36-1 at 17-23 (standing); Dck. No. 42 at 2-10 (standing); Dck. No. 70 at 3-6, 10 (standing and final agency action).

Treasury exempting employers with religious and moral objections from the requirement that group health plans cover contraceptive care without cost sharing, the Ninth Circuit found that it was reasonably probable that the plaintiff states would incur economic injury when women who lost coverage would seek contraceptive care through state-run programs or programs that the states are responsible for reimbursing. The Ninth Circuit found that the causal chain of occurrences leading to standing to be reasonably probable, noting specifically that the states did not need to identify a specific woman likely to lose coverage. *Id.* at \*6-\*7.

In this case, similar economic injury to the states has *already* happened and will, with reasonable probability, continue to happen. Students have enrolled and will continue to enroll at for-profit institutions that failed the debt-to-earnings rates, but those students did not receive the required direct disclosures or have an opportunity to see the disclosures in marketing materials that contain, among other things, a warning to prospective students about that failure. Those schools also continue to receive revenue from taxpayer-funded Title IV grants and loans, which would have been cut off under the Gainful Employment Rule (the "Rule") if the Department issued debt-to-earnings rates in 2018. It is, therefore, reasonably probable that students at institutions that fail the Rule's debt-to-earnings rates will be unable to earn enough money to pay back their student loan debt, causing harm to the states.[2] *See, e.g.*, Dck. No. 71 at 2-4; Dck. No. 64 at 4-7; Dck. No. 39 at 3-11. Moreover, as discussed below, the abrupt closure of yet another large for-

---

[2] The Rule itself explained the benefits to states that are being deprived when the Rule is not being enforced. *See, e.g.*, 79 Fed. Reg. at 65,080 ("State and local governments will benefit from improved oversight of their investments in postsecondary education.")

profit school with a number of failing programs provides further evidence of the harm to students and states caused by the Department's failure to enforce the Rule.

### 2. The Abrupt Closure of Education Corporation of America's Schools

On December 5, 2018, the Education Corporation of America ("ECA")[3], which offered 24 programs that were deemed failing in the debt-to-earnings metrics issued in 2017,[4] informed the Department that all of its on-ground (non-online) schools in 18 states, in which approximately 20,000 students attended at the time, would abruptly close.[5] If the Rule had been enforced, ECA would have been required to disclose a warning about its failing programs to prospective students directly and in its marketing materials. In addition, if the Department had complied with its obligation to issue debt-to-earnings rates, ECA would have been prohibited from receiving Title IV revenue for any of those 24 programs that again failed those rates in 2018. Through such enforcement, the Department would have accomplished its stated purpose of "protect[ing] students from enrolling in poorly performing programs" because fewer students would have been enrolled at ECA at the time of its abrupt closure. 79 Fed. Reg. at 64,971.

When a school closes (especially one of ECA's size), states incur economic injury. State agencies have to expend resources to handle student complaints and assist students in obtaining academic transcripts, accessing information on transfer options, and understanding student loan discharge eligibility criteria.[6] States incur further economic

---

[3] ECA is the corporate parent that operated, through various subsidiaries, Brightwood College, Brightwood Career Institute, Virginia College, Golf Academy of America, and Ecotech Institute.
[4] https://www.chronicle.com/article/Here-Are-the-Programs-That/238851 (last accessed January 8, 2019).
[5] *See* https://studentaid.ed.gov/sa/sites/default/files/education-corporation-america.pdf (last accessed January 8, 2019). *See also* https://www.marketwatch.com/story/major-for-profit-college-chain-collapses-2018-12-05 (last accessed January 8, 2019).
[6] *See, e.g.,* https://www.attorneygeneral.gov/protect-yourself/consumer-advisories/brightwood-career-institutes-closings/; https://mhec.maryland.gov/preparing/Pages/BrightwoodCollegeClosure.aspx;

injury as a result of such closures when state institutions and community colleges accept transfer students without requiring students to make additional tuition payments.[7] As a result of the Department's failure to enforce the Rule, the states have incurred and are likely to continue to incur, exactly the type of economic injury that the Rule sought to avoid: additional costs to the states to help harmed consumers. *See, e.g.*, 79 Fed. Reg. at 64,964 ("As a result of the student warning requirements, we expect fewer students will make complaints with State consumer agencies about being misled and enrolling in a program that subsequently loses eligibility.").

### 3. The Department's Failure to Publish a Final Rule

The Department has justified the June 18, 2018 Delay Notice as a "temporary stopgap measure" before a replacement Rule takes effect. *See* Defendants' Response to Plaintiffs' Second Supplemental Memorandum, ECF No. 70 at 5. However, the Department failed to publish a final Gainful Employment rule by November 1, 2018, the deadline for ensuring that a final effective rule will go into effect on July 1, 2019.[8] Even if the Department publishes a proposed final rule in 2019, such a rule will not go into effect before July 1, 2020, at the earliest. Accordingly, the June 18, 2018 Delay Notice, which will expire on July 1, 2019 is not a true "stopgap" measure because the Rule will remain in effect after the delay is over—unless, of course, the Department issues yet another delay notice. As the States' had argued in previous filings, the June 18, 2018 Delay Notice is a final agency action that violates the APA.

---

https://osar.bppe.ca.gov/closures/brightwood.shtml;
https://www.education.pa.gov/Documents/Postsecondary-Adult/College%20and%20Career%20Education/Private%20Licensed%20Schools/Brightwood%20Closure%20Memo.pdf (each was last accessed January 8, 2019).
[7] *See, e.g.,* https://mhec.maryland.gov/preparing/Pages/BrightwoodCollegeClosure.aspx
[8] *See* https://www.insidehighered.com/news/2018/10/04/education-department-misses-deadline-its-overhaul-student-loan-rules (last accessed January 3, 2019).

Respectfully submitted,

Dated: January 8, 2019

FOR THE STATE OF MARYLAND
BRIAN E. FROSH
ATTORNEY GENERAL

By: */s/ Christopher J. Madaio*
Christopher J. Madaio
Assistant Attorney General
Office of the Attorney General
Consumer Protection Division
200 St. Paul Place, 16th Floor
Baltimore, MD 21202
(410) 576-6585
Cmadaio@oag.state.md.us

FOR THE COMMONWEALTH OF
PENNSYLVANIA
JOSH SHAPIRO
ATTORNEY GENERAL

By: */s/ Michael J. Fischer*
Michael J. Fischer
Chief Deputy Attorney General
John M. Abel
Jesse Harvey
Senior Deputy Attorneys General
Pennsylvania Office of Attorney General
Strawberry Square
Harrisburg, PA 17120
(215) 560-2171
mfischer@attorneygeneral.gov

PEOPLE OF THE STATE OF
 ILLINOIS, by LISA MADIGAN
 ATTORNEY GENERAL OF
 ILLINOIS

By: */s/ Joseph Sanders*
 Joseph Sanders
 Gregory W. Jones
 Assistant Attorneys General
 Consumer Fraud Bureau
 Office of the Illinois Attorney General
 100 W. Randolph St., 12th Fl.
 Chicago, IL 60601

                312-814-6796 (Joseph)
                jsanders@atg.state.il.us
                gjones@atg.state.il.us

                FOR THE COMMONWEALTH OF
                MASSACHUSETTS
                MAURA HEALEY
                ATTORNEY GENERAL

By: */s/ Yael Shavit*
     Yael Shavit
     Assistant Attorney General
     Office of the Massachusetts Attorney General
     One Ashburton Place
     Boston, MA 02108
     (617) 963-2197
     yael.shavit@state.ma.us

     FOR THE STATE OF CALIFORNIA
     XAVIER BECERRA
     CALIFORNIA ATTORNEY GENERAL

By: */s/ Bernard A. Eskandari*
     Bernard A. Eskandari
     Deputy Attorney General
     300 South Spring Street, Suite 1702
     Los Angeles, California 90013
     (213) 897-2652
     bernard.eskandari@doj.ca.gov

     FOR THE STATE OF CONNECTICUT
     GEORGE JEPSEN
     ATTORNEY GENERAL

By: */s/ Joseph J. Chambers*
     Joseph J. Chambers
     Assistant Attorney General
     Connecticut Office of Attorney General
     PO Box 120
     Hartford, CT 06141-0120
     (860) 808-5270
     joseph.chambers@ct.gov

        FOR THE STATE OF DELAWARE
        KATHLEEN JENNINGS
        ATTORNEY GENERAL

By: */s/ Christian Douglas Wright*
     Christian Douglas Wright
     Director of Consumer Protection
     Deputy Attorney General
     Delaware Department of Justice
     820 N. French Street
     Wilmington, DE  19801
     (302) 577-8400
     christian.wright@state.de.us

     FOR THE DISTRICT OF COLUMBIA
     KARL A. RACINE
     ATTORNEY GENERAL

By: */s/ Benjamin M. Wiseman*
     Benjamin M. Wiseman
     Assistant Attorney General
     Attorney General for the District of Columbia
     441 4th Street, N.W., 6th Floor
     Washington, DC 20001
     (202) 741-5226
     benjamin.wiseman@dc.gov

     FOR THE STATE OF HAWAII
     RUSSELL A. SUZUKI
     ATTORNEY GENERAL OF HAWAII

By: */s/ Bryan C. Yee*
     Bryan C. Yee
     Deputy Attorney General
     425 Queen Street
     Honolulu, Hawaii 96813
     (808) 586-1180
     bryan.c.yee@hawaii.gov

     FOR THE STATE OF IOWA
     THOMAS J. MILLER
     ATTORNEY GENERAL

By: */s/ Jessica Whitney*
     Jessica Whitney

       Director - Consumer Protection
       Office of the Attorney General of Iowa
       1305 E. Walnut St.
       Des Moines, Iowa 50319
       (515) 281-8772
       Jessica.Whitney@iowa.gov

       FOR THE STATE OF MINNESOTA
       KEITH ELLISON
       ATTORNEY GENERAL

By: */s/ Jason Pleggenkuhle*
       Jason Pleggenkuhle
       Assistant Attorney General
       Bremer Tower, Suite 1200
       445 Minnesota Street
       St. Paul, MN 55101
       (651) 757-1147 (Voice)
       (651) 282-5832 (Fax)
       jason.pleggenkuhle@ag.state.mn.us


       FOR THE STATE OF NEW YORK
       LETITIA JAMES
       ATTORNEY GENERAL OF NEW YORK

By: */s/ Jane M. Azia*
       Jane M. Azia
       Chief, Bureau of Consumer Frauds and Protection
       28 Liberty Street,
       New York, New York 10005
       Tel.: (212) 416-8727
       Jane.azia@ag.ny.gov

       FOR THE STATE OF NORTH CAROLINA
       JOSHUA H. STEIN
       ATTORNEY GENERAL OF NORTH CAROLINA

By: */s/ Matt Liles*
       Matt Liles
       Assistant Attorney General
       North Carolina Department of Justice

       114 W. Edenton St.
       Raleigh, NC  27603
       P.O. Box 629
       Raleigh, NC  27602
       (919) 716-0141
       mliles@ncdoj.gov

       FOR THE STATE OF OREGON
       ELLEN F. ROSENBLUM
       ATTORNEY GENERAL

By: */s/ Katherine A. Campbell*
   Katherine A. Campbell
   Assistant Attorney General
   Oregon Department of Justice
   100 SW Market Street
   Portland, OR  97201
   (971) 673-1880
   katherine.campbell@doj.state.or.us

FOR THE STATE OF RHODE ISLAND
  PETER NEHRONA
  ATTORNEY GENERAL

By: */s/ Neil F.X. Kelly*
   Neil F.X. Kelly
   Deputy Chief, Civil Div.
   Assistant Attorney General
   Edmund F. Murray, Jr.
   Special Assistant Attorney General
   Rhode Island Department of Attorney General
   150 South Main Street
   Providence, Rhode Island 02903
   (401) 274-4400 ext. 2284
   nkelly@riag.ri.gov
   emurray@riag.ri.gov

       FOR THE STATE OF VERMONT
       THOMAS J. DONOVAN, JR.
       ATTORNEY GENERAL

By: */s/ Christopher J. Curtis*
   Christopher J. Curtis
   State of Vermont
   Office of the Attorney General

        Chief, Public Protection Division
        109 State St.
        Montpelier, VT 05609
        (802) 828-5586
        christopher.curtis@vermont.gov

        FOR THE COMMONWEALTH OF
        VIRGINIA
        MARK R. HERRING
        ATTORNEY GENERAL

By: */s/ Samuel T. Towell*
        Samuel T. Towell
        Deputy Attorney General, Civil
        Litigation
        Mark S. Kubiak
        Assistant Attorney General, Manager
        Barbara Johns Building
        202 N. Ninth St.
        Richmond, Virginia 23219
        (804) 786-6731
        stowell@oag.state.va.us

        FOR THE STATE OF WASHINGTON
        ROBERT W. FERGUSON
        ATTORNEY GENERAL

By: */s/ Jeffrey T. Sprung*
        Jeffrey G. Rupert
        Chief, Complex Litigation Division
        Jeffrey T. Sprung (D.C. Bar No.:
        384880)
        Assistant Attorney General
        Office of the Washington Attorney
        General
        1125 Washington St. SE
        P.O. Box 40100
        Olympia, WA 98504
        (206) 326-5492 (Sprung)
        jeffreyr2@atg.wa.gov
        jeff.sprung@atg.wa.gov
        benjaminr@atg.wa.gov
        cynthiaa@atg.wa.gov

## CERTIFICATE OF SERVICE

      I hereby certify that I have caused the foregoing document, and any attachments thereto, to be electronically filed with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system, and that all participants in the case will be served by the CM/ECF system.

                                          */s/ Christopher J. Madaio*
                                          Christopher J. Madaio