IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| STATE OF MARYLAND, et al., | ) | |
| | ) | Civil Action No. 1:17-2139 (KBJ) |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| EDUCATION, and ELIZABETH DEVOS, in her | ) | |
| official capacity as Secretary of Education, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF DEFENDANTS' SUPPLEMENTAL MOTION TO DISMISS BASED ON MOOTNESS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................iii

INTRODUCTION ................................................................................................... 1

RELEVANT BACKGROUND ................................................................................. 3

ARGUMENT ........................................................................................................... 6

     I.      THE STATES' CLAIMS ARE MOOT .................................................. 6

          A.      The States' Disclosure Delay Challenges Are Moot ................................. 8

          B.      The States' Appeals Process Challenges Are Moot ................................. 14

          C.      The States' Completers List Challenge Is Moot ..................................... 15

     II.      NO EXCEPTION TO THE MOOTNESS DOCTRINE APPLIES...................... 17

CONCLUSION ....................................................................................................... 20

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Albra v. Bd. of Trustees*, 296 F. Supp. 3d 181 (D.D.C. 2018) ...................................................... 16

*Already, LLC v. Nike, Inc.,* 568 U.S. 85 (2013) ............................................................................. 7

*Am. Ass'n of Cosmetology Schools* ("*AACS*") *v. DeVos*,
   258 F. Supp. 3d 50 (D.D.C. 2017)........................................................................... 4, 14, 20

*Am. Freedom Def. Initiative v. WMATA*, 901 F.3d 356 (D.C. Cir. 2018) ............................. 17, 18

*\*Bauer v. DeVos*, 325 F. Supp. 3d 74 (D.D.C. 2018) ................................................. 7, 8, 9, 10, 14

*Beethoven.com LLC v. Librarian of Cong.*, 394 F.3d 939, 951 (D.C. Cir. 2005) ....................... 19

*Clarke v. United States*, 915 F.2d 699 (D.C. Cir. 1990) ................................................................ 7

*CREW v. Wheeler*, 352 F. Supp. 3d 1 (D.D.C. 2019) ..................................................................... 9

*Daimler Trucks N. Am. LLC v. EPA*, 745 F.3d 1212 (D.C. Cir. 2013) ........................................ 17

*Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316 (D.C. Cir. 2009) ........................ 20

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167 (2000) ........................... 17

*Fund for Animals v. Norton*, 512 F. Supp. 2d 49 (D.D.C. 2007) ................................................... 9

*Gomez v. Nielsen*, 301 F. Supp. 3d 91 (D.D.C. 2018) ................................................................. 16

*Grand Lodge of the Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9 (D.D.C. 2001) ..... 7

*Grass Works Lawn Care v. Acosta*,
   No. 18-1581 (RMC), 2019 WL 1981087 (D.D.C. May 3, 2019) ................................... 17

*Howard v. United States*, 949 F. Supp. 2d 54 (D.D.C. 2013) ...................................................... 16

*Initiative & Referendum Inst. v. U.S. Postal Serv.*, 685 F.3d 1066 (D.C. Cir. 2012) ................. 19

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ................................................ 7

*Larsen v. U.S. Navy*, 525 F.3d 1 (D.C. Cir. 2008) ......................................................... 15, 18, 19

*Lemon v. Geren*, 514 F.3d 1312 (D.C. Cir. 2008) ......................................................................... 7

*McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders of Judicial Conference*, 264 F.3d 52 (D.C. Cir. 2001) .......................................................................... 7

*Newdow v. Roberts*, 603 F.3d 1002 (D.C. Cir. 2010) ................................................................... 20

*Norton v. SUWA*, 542 U.S. 55 (2004) ....................................................................................... 16

*Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726 (1998) .................................................. 16

*Pub. Utilities Comm'n of Calif. v. FERC*, 236 F.3d 708 (D.C. Cir. 2001) .................................. 19

*Sierra Club v. Browner*, 130 F. Supp. 2d 78 (D.D.C. 2001) ...................................................... 12

*Steffel v. Thompson*, 415 U.S. 452 (1974) ................................................................................. 7

*True the Vote, Inc. v. Internal Revenue Serv.*, 71 F. Supp. 3d 219 (D.D.C. 2014) ....................... 7

*Weinstein v. Bradford*, 423 U.S. 147 (1975) (per curiam) ........................................................... 19

*Zukerman v. U.S. Postal Serv.*, 384 F. Supp. 3d 44 (D.D.C. 2019), *appeal filed*, No. 19-5168 (D.C. Cir. filed May 31, 2019).  .......................................... 7, 9

**Statutes**

5 U.S.C. § 706 ................................................................................................... 7, 8, 15, 16

Higher Education Act ("HEA") Title IV, 20 U.S.C. §§ 1070 *et seq.*  ........................................... 1

20 U.S.C. § 1089(c)(2)(A) .......................................................................................... 5

**Regulations**

34 C.F.R. § 600.20 ................................................................................................ 12

34 C.F.R. § 668.403 ............................................................................................... 12

34 C.F.R. § 668.405 ........................................................................................ 6, 13, 15, 17

34 C.F.R. § 668.410 ............................................................................................... 11

34 C.F.R. § 668.412 .................................................................................... 3, 5, 8, 9, 12, 13, 18

**Other Administrative Materials**

82 Fed. Reg. 30975 (July 5, 2017) ("July 5, 2017 Announcement") ........................................ 3, 9

82 Fed. Reg. 39362 (Aug. 18, 2017) ("Aug. 18, 2017 Announcement") .................................3-4

83 Fed. Reg. 28177 (June 18, 2018) ("June 18, 2018 Announcement").................................. 4, 9

U.S. Dep't of Educ., Notice of Proposed Rulemaking ("NPRM"),
    83 Fed. Reg. 40167-01 (Aug. 14, 2018) .......................................................................... 5

U.S. Dep't of Educ., Final regulations,
    84 Fed. Reg. 31392 (July 1, 2019) ("2019 Final Rule") ..........................................*passim*

## INTRODUCTION

The States filed this lawsuit in October 2017, challenging three aspects of the implementation by defendants the U.S. Department of Education and Elizabeth DeVos, the Secretary of Education, (collectively, "Defendants" or "the Department") of the gainful employment ("GE") regulations promulgated under Title IV of the Higher Education Act of 1965 ("HEA"). Since the case was filed, the parties have fully briefed and argued cross-motions for summary judgment, and have submitted rounds of supplemental briefing. Among other things, Defendants have asserted, and continue to maintain, that the States lack standing—given that they themselves are not subject to the GE regulations and seek to mount this challenge in their capacity as *parens patriae*, which is impermissible against the United States, or based on speculative and attenuated injuries that they claim stem from the Department's alleged failures in implementation.

Meanwhile, however, outside the context of the litigation, the Department has continued to implement the GE regulations over the past twenty-two months while also reconsidering their effectiveness in new negotiated and notice and comment rulemakings, culminating in a new final rule (the "2019 Final Rule") that rescinded the GE regulations altogether as of July 1, 2020, with an option for early implementation by GE programs prior to that date. As a result, the States' claims have become moot, in some cases for multiple reasons.

First, the States challenged the Department's extension of the deadline for GE programs to comply with certain disclosure requirements, but the challenged extension expired while this case was pending. The States then amended their Complaint to assert a new challenge to a subsequent extension, but the new extended deadline has now also passed, and the disclosure requirements are now in effect—the very relief that the States had requested. At the same time, any institution offering one or more GE programs that chooses to adopt early implementation of the 2019 Final

Rule need not comply with the regulations at all, including their disclosure requirements. Either way, the Court cannot grant meaningful relief with respect to this claim.

Second, the States challenged certain changes that the Department made, in response to an adverse decision in another case, with respect to certain GE programs' submission of alternate earnings appeals seeking to improve their debt-to-earnings ("D/E") rates that, according to the Department's calculation, were failing or "in the zone" for the initial year that the GE regulations were in effect. Here also, the States sought to challenge the Department's extension of a deadline—this time, the deadline to submit appeals—and again that deadline has now passed, such that GE programs seeking to submit appeals have already done so, and the majority of those appeals have already been decided. No meaningful relief is available for that aspect of the States' claim. Nor can the States expect redress from their challenge to the Department's changes to the criteria for the evaluation of alternate earnings data, in light of the 2019 Final Rule and option for early implementation. This is particularly true where the States' asserted injuries, for Article III purposes, rely on the notion that some GE programs will lose Title IV eligibility as a result of the calculated D/E rates. No GE program can lose Title IV eligibility based on a single year of failing or in the zone D/E rates, but at this point the Department is not able to calculate D/E rates for a second year. Not only would GE programs offered by institutions that have adopted early implementation be excepted from any such calculations, but the calculation has also become impossible as a practical matter because the Social Security Administration ("SSA") has failed to renew its agreement with the Department to provide the aggregate program earnings data that would be needed to complete the calculation.

Third, the States challenged the Department's alleged delay in providing institutions with Draft GE Completers Lists—one step in the process of calculating GE program D/E rates for a

second year. However, the Department provided the Draft GE Completers Lists to institutions over a year ago. Since then, the Department has finalized the GE Completers Lists, which was the last step of the D/E calculation process that it was able to complete without SSA earnings data. And as described above, even if the Department had the necessary data, institutions offering GE programs that have adopted early implementation of the 2019 Final Rule need not have the D/E rates of those programs calculated, nor need they comply with any consequences that the GE regulations would otherwise impose on those GE programs with failing rates. Here, again, the Court can provide no meaningful relief. Accordingly, this case should be dismissed.

## RELEVANT BACKGROUND

The background to this case is set forth in Defendants' earlier summary judgment briefing. [ECF 35, 36, 42, 66, 84.] As relevant to this supplemental motion, the States filed their Complaint [ECF 1] on October 17, 2017, challenging three developments related to the Department's implementation of the GE regulations:

First, the States challenged, on both procedural and substantive grounds, the Department's announcement, published on its GE website on June 30, 2017, and in the Federal Register on July 5, 2017 ("July 5, 2017 Announcement"), that it was extending to July 1, 2018 the deadline for GE programs to begin complying with 34 C.F.R. § 668.412(d) and (e) by including certain disclosures in their promotional materials and providing those disclosures directly to prospective students. Compl. ¶¶ 100, 109; 82 Fed. Reg. 30975 (July 5, 2017); *see also* Electronic Announcement ("EA") #106.[1] Second, the States challenged, also on both procedural and substantive grounds, changes to alternate earnings appeal requirements that the Department announced in the July 5, 2017

---

[1] The Department's EAs related to implementation of the GE regulations are available at https://ifap.ed.gov/GainfulEmploymentInfo/GEDCLandEAV2.html.

Announcement as well as in a later announcement issued on August 18, 2017, 82 Fed. Reg. 39362 (Aug. 18, 2017) ("Aug. 18, 2017 Announcement"), following an adverse decision by the Court in *American Ass'n of Cosmetology Schools* ("*AACS*") *v. DeVos*, 258 F. Supp. 3d 50 (D.D.C. 2017). Compl. ¶¶ 100, 109; 82 Fed. Reg. 30975; 82 Fed. Reg. 39362; *see also* EA #106 (June 30, 2017), 108 (Aug. 18, 2017). Third, the States challenged the Department's delay in issuing Draft GE Completers Lists. Compl. ¶¶ 115-121.

The parties filed cross-motions for summary judgment, which were fully briefed as of March 27, 2018. [ECF 33, 35-37, 39-40, 42.] A hearing on the parties' cross-motions took place on May 1, 2018. At the hearing, Defendants notified the Court that the Department had distributed Draft GE Completers Lists on April 30, 2018. *Cf.* EA #114 (Apr. 27, 2018). The States then filed a supplemental brief on June 19, 2018 [ECF 64], as well as a Motion for Leave to File Amended Complaint on June 22, 2018 [ECF 65]. The States' proposed Amended Complaint sought to add a challenge to the Department's announcement of a further extension, until July 1, 2019, of the deadline to comply with 34 C.F.R. § 668.412(d) and (e). *See* proposed Am. Compl. ¶¶ 81, 105, 114; 83 Fed. Reg. 28177 (June 18, 2018) ("June 18, 2018 Announcement"); *see also* EA #116 (June 18, 2018). Defendants responded to the States' supplemental brief on July 3, 2018 [ECF 66], and opposed the States' Motion for Leave to File Amended .Complaint on July 6, 2018 [ECF 67].

On August 30, 2018, the Court granted the States' Motion for Leave to File Amended Complaint and ordered supplemental briefing, which was completed on September 27, 2018.[2] [ECF 69, 70, 71.] Subsequently, on April 12, 2019, the Court ordered additional supplemental

---

[2] In Defendants' Notice of Administrative Action and Suggestion of Mootness [ECF 85], Defendants erroneously stated that the States' Motion for Leave to File Amended Complaint remained pending. In fact, the Court granted that Motion by Minute Order of August 30, 2018. However, the Amended Complaint was never separately filed on the docket. The Amended Complaint thus can be found attached to the States' Motion at ECF 65-2.

briefing regarding the impact of a recent D.C. Circuit decision on the States' standing. [ECF 82] That briefing was completed on June 3, 2019. [ECF 83, 84.]

Meanwhile, following a negotiated rulemaking process, the Department issued a Notice of Proposed Rulemaking ("NPRM") on August 14, 2018, proposing to rescind the GE regulations. *See* U.S. Dep't of Educ., NPRM, 83 Fed. Reg. 40167-01 (Aug. 14, 2018). Following a comment period, the Department issued a Final Rule on July 1, 2019, rescinding the GE regulations. *See* U.S. Dep't of Educ., Final regulations, 84 Fed. Reg. 31392 (July 1, 2019) ("2019 Final Rule"). The effective date of the 2019 Final Rule is July 1, 2020. *Id.* at 31392. However, the Secretary exercised her authority under section 482(c) of the HEA, 20 U.S.C. § 1089(c)(2)(A), to designate the regulatory changes effectuated through the Final Rule for early implementation beginning on July 1, 2019, at the discretion of each institution. 2019 Final Rule, 84 Fed. Reg. at 31396.

The Department also continued to implement the GE regulations. In regard to disclosures, since April 6, 2018, institutions have been required to post the disclosures required by the GE regulations on their program websites pursuant to 34 C.F.R. § 668.412(a), (b), and (c). *See* EA #116. The Department also announced the release of the 2019 GE Disclosure Template on May 9, 2019, and indicated that programs were required to update their disclosures pursuant to 34 C.F.R. § 668.412(a), (b), and (c) by July 1, 2019. *See* EA #119 (May 9, 2019). On May 23, 2019, the Department issued a reminder that the extension announced in the June 18, 2018 Announcement would expire as of July 1, 2019, and that the disclosure requirements set forth in § 668.412(d) and (e) would go into effect on that date. *See* EA #120 (May 23, 2019).

In regard to the Department's calculation of D/E rates for subsequent years, as indicated above, the Department provided institutions with Draft GE Completers Lists in April 2018, setting the deadline for institutions to submit corrections to the Lists on June 13, 2018. EA #115 (June 6,

2018). Institutions were also required to submit GE program data for the 2017-18 award year by October 1, 2018. *See* EA #117 (Aug. 24, 2018). The Department then issued Final GE Completers Lists on April 8, 2019. *See* EA #118 (Apr. 5, 2019).

The next step in the process of calculating D/E rates pursuant to the GE regulations would be to obtain aggregate earnings data from the SSA for the graduates listed on the GE Completers Lists. *See* 34 C.F.R. § 668.405(a)(3). However, the Department has explained that the Memorandum of Understanding ("MOU"), pursuant to which the SSA had agreed to share such earnings data with the Department, expired before it was able to obtain the earnings data necessary to complete the D/E rate calculation for a second year. *See* EA #118 ("Since the [MOU] under which [SSA] shared earnings data with the Department has expired, the Department is unable to calculate D/E rates in 2019."); *see also* 2019 Final Rule, 84 Fed. Reg. at 31392 (explaining that SSA has not signed a new MOU with the Department to share earnings data, and that, as a result, "the Department is currently unable to calculate D/E rates").

## ARGUMENT

## I.   THE STATES' CLAIMS ARE MOOT

Defendants have previously explained that the States lack standing to assert their claims challenging Defendants' implementation of the GE regulation. For that reason alone, the Court should dismiss the States' claims for lack of subject matter jurisdiction. In addition, as Defendants have also previously explained, summary judgment in Defendants' favor is also warranted on the merits. However, beyond those grounds for rejecting the States' claims, in the nearly two years since the States originally brought suit, those claims have been overtaken by events that have resulted in a changed regulatory regime. Because the States' claims can no longer result in any meaningful relief, they should be dismissed as moot.

A federal court is presumed to lack subject matter jurisdiction until the plaintiff establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A plaintiff's claims of jurisdiction should be closely scrutinized because a court has "an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Grand Lodge of the Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001); *cf. True the Vote, Inc. v. Internal Revenue Serv.*, 71 F. Supp. 3d 219, 226 (D.D.C. 2014) ("Unless an actual, ongoing controversy exists in this case, this Court is without power to decide it." (quoting *Clarke v. United States*, 915 F.2d 699, 700-01 (D.C. Cir. 1990))).

"Federal courts must ensure not only that they have Article III jurisdiction at the outset of a case, but also that the parties' dispute—or 'controversy'—remains live 'at all stages of review.'" *Bauer v. DeVos*, 325 F. Supp. 3d 74, 92 (D.D.C. 2018) (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974)). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Zukerman v. U.S. Postal Serv.*, 384 F. Supp. 3d 44 (D.D.C. 2019) (no pin cite available) (quoting *Already, LLC v. Nike, Inc.,* 568 U.S. 85, 92 (2013)), *appeal filed*, No. 19-5168 (D.C. Cir. filed May 31, 2019). "When 'intervening events make it impossible to grant the prevailing party effective relief,' no live controversy remains." *Id.* (quoting *Lemon v. Geren*, 514 F.3d 1312, 1315 (D.C. Cir. 2008)); *see also McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders of Judicial Conference*, 264 F.3d 52, 55 (D.C. Cir. 2001) (recognizing requests for declaratory and injunctive relief are moot when "events outrun the controversy such that the court can grant no meaningful relief").

The States' claims, as set forth in their Amended Complaint, consist of (1) procedural and substantive challenges, under 5 U.S.C. § 706(2)(A), (C), and (D), to the July 5, 2017 and June 18,

7

2018 Announcements, insofar as those Announcements extended the deadline for GE programs to comply with 34 C.F.R. § 668.412(d) and (e), Am. Compl. ¶¶ 105, 112, 114 ("Disclosure Delay Challenges"); (2) procedural and substantive challenges, under 5 U.S.C. § 706(2)(A), (C), and (D), to the July 5, 2017 and August 18, 2017 Announcements, insofar as those Announcements made changes to the process of submitting alternate earnings appeals, Am. Compl. ¶¶ 105, 112, 114 ("Appeals Process Challenges"); and (3) a challenge under 5 U.S.C. § 706(1) based on the Department's alleged failure to issue Draft GE Completers Lists, which in turn allegedly resulted in the Department's failure to carry out further steps of the D/E rate calculation process, Am. Compl. ¶¶ 124-125 ("Completers List Challenge"). Each of these challenges is moot, as described below.

## A.  The States' Disclosure Delay Challenges Are Moot

The Disclosure Delay Challenges are moot, first and foremost, because the last challenged delay has now expired. They are also moot because, in light of the 2019 Final Rule's rescission of the GE regulations, as well as its option for early implementation, there is no realistic possibility that any relief granted by the Court to remedy the Amended Complaint's alleged APA violations could redress the States' claimed injuries.

First, the Disclosure Delay Challenges are moot because July 1, 2019, the date to which the deadline for complying with 34 C.F.R. § 668.412(d) and (e) was last extended, has now passed, and the disclosure requirements in § 668.412(d) and (e) are thus now in effect for those GE programs that remain subject to the GE regulations. "[T]he D.C. Circuit and this Court have typically dismissed challenges to regulatory actions as moot once those actions have expired or have been overtaken by other regulatory actions." *Bauer*, 325 F. Supp. 3d at 92. In *Bauer*, the Court concluded that the plaintiffs' challenge to an interim final rule delaying the effective date of

the Department's previously-promulgated borrower defense regulations was, for the most part, moot once the delay had expired. *See id.*[3]

Here, the States' Disclosure Delay Challenges are moot for similar reasons. The extension announced in the July 5, 2017 Announcement expired on July 1, 2018. *See* 82 Fed. Reg. at 30975. The subsequent extension announced in the June 18, 2018 Announcement expired on July 1, 2019. *See* 83 Fed. Reg. at 28177. The delays that the States challenged have thus expired by their own terms, and the requirements that the States sought to compel are already in effect. *See also* EA #120 (reminding institutions offering GE programs that the disclosure requirements set forth in § 668.412(d) and (e) would go into effect on July 1, 2019). Under the reasoning of *Bauer*, that fact alone is enough to render these claims moot. *Cf. Bauer*, 325 F. Supp. 3d at 92 ("Vacatur of a delay rule that, by its own terms, no longer purports to affect the rights or obligations of the parties would be pointless.").

Moreover, the rescission of the GE regulations in their entirety, as set forth in the 2019 Final Rule, together with the Secretary's authorization of early implementation, also serve to moot the Disclosure Delay Challenges. *See Zukerman*, 384 F. Supp. 3d 44 (agreeing that claims based on rescinded guidelines are moot because "it is 'a perfectly uncontroversial and well-settled principle of law' that rescinding and replacing a challenged regulation moots litigation over the original regulation"); *CREW v. Wheeler*, 352 F. Supp. 3d 1, 11 (D.D.C. 2019) (dismissing claims based on recognition that "[t]he promulgation of a superseding policy or program can have the power to moot a challenge to the old one"); *Fund for Animals v. Norton*, 512 F. Supp. 2d 49, 52–53 (D.D.C. 2007) ("A challenge to agency regulations becomes moot once those regulations

---

[3] The Court in *Bauer* proceeded to address one aspect of the plaintiffs' challenge, related to the Department's interpretation of the HEA's Master Calendar Provision, which continued to be relevant to the plaintiffs' requested relief. *See id.* at 93. No similar issue remains here.

expire.").

The 2019 Final Rule moots the States' procedural challenge to the July 5, 2017 and June 18, 2018 Announcements in Count I because the Department has now followed the very procedures that the States claim were required. The States' Count I asserted that the Announcements qualified as amendments to the GE regulations that could only be promulgated through the HEA's negotiated rulemaking process as well as the APA's notice and comment rulemaking process. *See* Am. Compl. ¶¶ 106-108. But the Department now has gone through negotiated rulemaking as well as notice and comment rulemaking in its promulgation of the 2019 Final Rule, which rescinded the GE regulations in their entirety. *See* 2019 Final Rule, 84 Fed. Reg. at 31394 (explaining that "the Department engaged in negotiated rulemaking to evaluate the accuracy and usefulness of the GE regulations"), 31396 (indicating that the Department received 13,921 comments on its proposed rule). The fact that the Department has already gone through these procedures eliminates the possibility that the Court could order meaningful relief with respect to the States' procedural claims. *Cf. Bauer*, 325 F. Supp. 3d at 92 ("It would . . . be pointless to issue a declaratory judgment that the procedures used to adopt [the challenged] interim rule were unlawful" where the agency's latest actions "were adopted pursuant to different procedures").

The 2019 Final Rule also moots the States' substantive challenge to the July 5, 2017 and June 18, 2018 Announcements in Count II because setting aside the challenged Announcements as arbitrary, capricious, or in excess of statutory authority, as the States request, *see* Am. Compl. ¶¶ 116, 118, would fail to provide the States with any meaningful relief. Under the 2019 Final Rule, not only will the GE regulations be rescinded in their entirety as of July 1, 2020, but any institutions offering GE programs also can choose not to wait for that date and instead stop following the requirements of the GE regulations immediately. *See* 84 Fed. Reg. at 31396

(allowing early implementation). Setting aside Announcements that already are, at any institution's option, no longer in effect would not qualify as meaningful relief.

Indeed, the States' asserted injuries depend on the notion that, because of the agency actions or inaction they sought to challenge,[4] GE programs that might otherwise have been shut down due to the loss of Title IV eligibility would continue to operate, and programs that might otherwise have faced falling enrollments because warnings and other disclosures might have driven prospective students away would continue to attract students. *E.g.*, Am. Compl. ¶¶ 96 (asserting that the challenged actions "depriv[e] [current and prospective students] of adequate information to make informed choices about enrolling in educational programs"); 97 (challenged actions cause "waste and loss of State-funded grant and loan money provided to institutions that would otherwise be ineligible for Title IV loans or required to warn students about potential ineligibility" as well as diversion of state resources to enforce laws against "institutions that should be ineligible for Title IV loans"). Their requested remedy was thus intended to redress those alleged injuries by ensuring that such programs would, instead, lose students or even shut down.

To the extent the States' theory depends on the notion that student warnings would lead GE programs to shut down or drive students away, those warnings are only required for a GE program that "could become ineligible [for Title IV assistance] based on its final D/E rates measure for the next award year." 34 C.F.R. § 668.410(a). And in order for any GE program to lose Title IV eligibility under the GE regulations, it must have a failing D/E rate for two out of three consecutive years, or a combination of D/E rates that are "in the zone" or failing for four

---

[4] As Defendants have pointed out in prior briefing, the States never made any attempt to link their asserted injuries to any specific agency action or inaction that they sought to challenge. Accordingly, the fact that those injuries cannot be redressed by the relief the States seek renders the States' claims moot in their entirety.

consecutive years. 34 C.F.R. § 668.403(c)(4). Thus far, the Department has calculated D/E rates only for one year—the initial year that the GE regulations were in effect. Thus, only GE programs that received a "failing" rate in that initial year of D/E rate calculations would currently be required to issue these warnings.

The Department requires these warnings to be included in a GE program's disclosures, including disclosures that are distributed pursuant to § 668.412(d) and (e). *See* EA #119 (indicating that the 2019 disclosure template includes "[w]arning language if required under 34 CFR 668.410"). Thus, the States' Disclosure Delay Challenges might initially have had some attenuated connection to their asserted injuries—although not sufficiently concrete or imminent to support standing. However, now that the last extension of the disclosure requirements in § 668.412(d) and (e) has expired, any GE program that did receive a "failing" D/E rate is already required to provide those warnings—unless the institution offering that GE program has adopted early implementation of the 2019 Final Rule. Either way, the Court's decision on the States' Disclosure Delay Challenges would not affect a GE program's obligation. *See Sierra Club v. Browner*, 130 F. Supp. 2d 78, 82 (D.D.C. 2001) (claim moot "[b]ecause the Court is unable to grant any relief beyond requiring steps that [the agency had] already taken").

To the extent the States' theory of injury is not tied to warnings but instead depends on the notion that GE programs will shut down or lose enrollments as a result of becoming ineligible for Title IV assistance, their Disclosure Delay Challenges also fail to provide any realistic prospect of meaningful relief. As an initial matter, such a theory has no discernible connection to the States' Disclosure Delay Challenges since, after all, no disclosures are required for an institution's programs that are already Title IV-ineligible. *See* 34 C.F.R. § 600.20(e) (indicating ineligible programs within an institution are not considered part of an "eligible institution"). Moreover, the

benefit that the States envision would require that some GE programs lose Title IV eligibility, but as explained above, that could only happen if D/E rates continue to be calculated beyond the initial year. In light of the 2019 Final Rule, however, the Department will not calculate D/E rates after July 1, 2020. Moreover, any institution offering a GE program that might otherwise receive a failing or in the zone D/E rate prior to that date has the option to adopt early implementation of the 2019 Final Rule, thus opting out of the D/E rate calculation process.

The Department has also explained that, even for GE programs that do not choose early implementation, it is unable to complete the process of calculating D/E rates in accord with the GE regulations because the GE regulations require the Department to use SSA earnings data for its calculation, *see* 34 C.F.R. § 668.405(d), but the Department is no longer able to obtain this data from SSA. *See* EA #118 ("Since the [MOU] under which [SSA] shared earnings data with the Department has expired, the Department is unable to calculate D/E rates in 2019."); 2019 Final Rule, 84 Fed. Reg. at 31392 ("[S]ince [SSA] has not signed a new Memorandum of Understanding (MOU) with the Department to share earnings data, the Department is currently unable to calculate D/E rates, which serve as the basis of the 2014 Rule's accountability framework.").[5] Because D/E rates cannot be calculated beyond the initial year, there is no realistic prospect that any GE program will lose Title IV eligibility, much less shut down, due to the GE regulations, including the disclosure requirements set forth in 34 C.F.R. § 668.412(d) and (e). Thus, any ruling by the Court on the merits of the States' Disclosure Delay Challenges would be pointless.

---

[5] The Department further explained in the 2019 Final Rule that, because the GE regulations had specified that the D/E rate calculation must use SSA data, it could not use a different source of earnings data without first raising the issue in negotiated rulemaking and then following notice and comment rulemaking. 2019 Final Rule, 84 Fed. Reg. at 31393. Given its determination, in the 2019 Final Rule, to rescind the GE regulations, the Department does not plan to engage in any further rulemaking process to identify a new data source. *See id.*

## B.  The States' Appeals Process Challenges Are Moot

The Appeals Process Challenges are moot for similar reasons. First, as explained above, the procedural challenges are moot because the Department has now gone through negotiated and notice and comment rulemaking, resulting in the rescission of the GE regulations altogether. *Cf. Bauer*, 325 F. Supp. 3d at 92.

Second, the States' challenge to the Department's extension of the deadline for all institutions to submit alternate earnings appeals *see* Am. Compl. ¶¶ 105, 114, is moot because the extended deadline—February 1, 2018—has long since passed. *Cf. Bauer*, 325 F. Supp. 3d at 92. Indeed, because those GE programs that sought to submit appeals have already done so, the Court cannot provide any meaningful relief with respect to that challenge.

The States also challenge the August 18, 2017 Announcement insofar as that Announcement indicated that, in light of the Court's decision in *AACS v. DeVos*, 258 F. Supp. 3d 50 (D.D.C. 2017), the Department would not require a specific response rate for the alternate earnings data that a GE program submitted in its alternate earnings appeal. Am. Compl. ¶¶ 105, 114. This challenge is also moot. For one thing, any alternate earnings appeal with respect to the initial year of the D/E rate calculation was already submitted in reliance on the criteria set forth in the August 18, 2017 Announcement, and the Department has already issued decisions with respect to many of those appeals, applying the same criteria. Thus, it would be difficult, as a practical matter, to set aside the criteria for those appeals retroactively.

Moreover, even if the Department's decisions regarding those appeals were set aside, such a remedy would have no practical effect for purposes of redressing the States' asserted injuries. As discussed above, after the GE regulations at issue took effect, D/E rates were only calculated for one year, and that will be the only year that final D/E rates can ever be calculated, due to the

rescission of the GE regulations as well as the Department's inability to obtain earnings data from SSA. Because no D/E rates will be calculated for a second year, no alternate earnings appeals will be filed in the future. Thus, it would be pointless for the Court to address the appropriate criteria for such appeals. Moreover, only GE programs that received a failing rate in the initial year's calculation could conceivably be affected by the success or failure of their appeal—through the student warnings requirement in 34 C.F.R. § 668.410(a)—but even those GE programs will not be affected if the institutions offering those GE programs adopt early implementation of the 2019 Final Rule. The Court therefore cannot provide meaningful relief to the States with respect to these claims even if the States were to prevail. *See Larsen v. U.S. Navy*, 525 F.3d 1, 4 (D.C. Cir. 2008) ("any injunction or order declaring [the challenged practice] illegal would accomplish nothing— amounting to exactly the type of advisory opinion Article III prohibits."). These claims thus are also moot.

### C.    The States' Completers List Challenge Is Moot

The States' final claim is also moot. Count III of the Amended Complaint, like Count III of the original Complaint, asserts that the Department's failure to provide Draft GE Completers Lists to institutions pursuant to 34 C.F.R. § 668.405 is an unlawfully withheld or unreasonably delayed agency action, in violation of 5 U.S.C. § 706(1). Am. Compl. ¶¶ 121, 124. However, as Defendants previously informed the Court, the Department provided Draft GE Completers Lists to institutions on or about April 30, 2018. EA #114; *see* Def. Response to Pl. Supp. Mem. ("Def. Supp. Response") [ECF 66], at 6 (filed July 3, 2018) (arguing that the States' Count III was moot).

The fact that the Department has completed the action that the States claim was unreasonably delayed renders the States' claim moot. *See Gomez v. Nielsen*, 301 F. Supp. 3d 91, 95 (D.D.C. 2018) (plaintiff asylum applicant's claim of unreasonable delay in consideration of

asylum application became moot after his asylum interview was scheduled); *Albra v. Bd. of Trustees*, 296 F. Supp. 3d 181, 185 n.4 (D.D.C. 2018) (to extent plaintiff's § 706(1) claim was based on "any delay by [the Department] in enforcing" certain provisions of an agreement with the plaintiff's school, "this aspect of his claims is rendered moot by [the Department's] September 11, 2017 notice" indicating it had found the school in compliance with the agreement); *Howard v. United States*, 949 F. Supp. 2d 54, 57 (D.D.C. 2013) (plaintiff's APA claim against the Department alleging unlawful refusal to discharge his student loans was rendered moot when the Department discharged plaintiff's student loans). Count III therefore should be dismissed on that basis alone.

Moreover, even if the Court construes Count III as asserting a broader claim seeking to compel all steps of the Department's D/E rate calculation process,[6] any such claim is also moot because, as explained above, when it comes to the calculation of D/E rates, the Department's inability to obtain aggregate earnings data from the SSA, as well as its rescission of the GE regulations and its authorization of early implementation of the 2019 Final Rule, mean that the Court cannot provide meaningful relief that would redress the States' alleged injuries. Indeed, at this point, the Department has gone as far as it can in completing the D/E rate calculation for a second year. It provided institutions with Draft GE Completers Lists, it accepted institutions' corrections of those Drafts, and it issued final GE Completers Lists. *See* EA #118. The next step

---

[6] Defendants previously explained that it would be inappropriate to so construe the States' Count III because such an interpretation would essentially transform the States' challenge to one discrete alleged failure to act into the type of broad programmatic attack that the APA's "agency action" requirement prohibits. *See* Def. Supp. Response, at 7 (citing *Norton v. SUWA*, 542 U.S. 55, 67 (2004)). Moreover, because each step of the D/E rate calculation process is contingent on completion of previous steps, some of which require action by third parties such as institutions offering GE programs or the SSA, any challenge to Defendants' failure to complete later steps was unripe when the States filed their claim regarding the Draft GE Completers List and could not plausibly be deemed unreasonable if earlier prerequisite steps had not yet occurred. *Cf. Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 732 (1998) (holding challenge to forest plan unripe where the agency had not completed intermediate steps necessary to implement the plan).

of the D/E rate calculation process would entail obtaining SSA aggregate program earnings data for the students on each GE program's GE Completers List. *See* 34 C.F.R. § 668.405(1)(3). However, SSA has not agreed to provide the Department with the data that would be necessary to proceed with the D/E rate calculation in accord with the GE regulations. *See id.* § 668.405(e). This is therefore a situation where "'an event occur[red] while [the] case is pending . . . that makes it impossible for the court to grant "any effectual relief whatever"'" to the States if they were to prevail in Count III. *Grass Works Lawn Care v. Acosta*, No. 18-1581 (RMC), 2019 WL 1981087, at *5 (D.D.C. May 3, 2019) (quoting *Daimler Trucks N. Am. LLC v. EPA*, 745 F.3d 1212, 1216 (D.C. Cir. 2013)) (citation omitted) (holding plaintiffs' claims moot upon expiration of the time period during which the temporary employment permits at issue in the case would be valid). The Court therefore should dismiss Count III as moot as well.

## II.     NO EXCEPTION TO THE MOOTNESS DOCTRINE APPLIES

The States' claims also fail to qualify for any exception to the mootness doctrine. Although the intervening events that have mooted the States' claims are, in part, "of the defendant's own doing," the voluntary cessation exception is inapplicable. *See Am. Freedom Def. Initiative v. WMATA*, 901 F.3d 356, 362 (D.C. Cir. 2018). That exception typically applies when the defendant has voluntarily ceased the challenged conduct. *Id.* The rationale underlying the exception is that defendants should not be able to evade judicial review by voluntarily changing their behavior, then requiring the court to "leave the defendant . . . free to return to his old ways" once the case is dismissed as moot. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000). Thus, when applicable, the exception requires a court to examine whether "(1) there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely or irrevocably eradicated the effects of the alleged violation." *Am. Freedom Def.*

*Initiative*, 901 F.3d at 362.

The situation here—particularly, the rescission of the GE regulations through the 2019 Final Rule—is not one that implicates the exception. Here, the States did not challenge the GE regulations, but instead challenged Defendants' alleged failures or delays in implementing the GE regulations. The rescission of the GE regulations moots the States claims, not by providing them with the relief they sought, but by changing the regulatory regime such that the legal requirements that the States invoked, in seeking to compel the Defendants' actions, are no longer in effect. Essentially, once the 2019 Final Rule goes into effect, any alleged failure by the Department to implement the GE regulations would violate no law because the regulations will have been rescinded. *Cf. Larsen*, 525 F.3d at 4 ("any injunction or order declaring [a challenged government policy that had been eliminated] illegal would accomplish nothing—amounting to exactly the type of advisory opinion Article III prohibits"). There can be no concern about the Department returning to its old ways by again delaying the GE regulations once this case is dismissed because there will be no GE regulations to delay.

To the extent the expiration of the Department's alleged delays—in implementing the disclosure requirements of 34 C.F.R. § 668.412(d) and (e), and in providing institutions with Draft GE Completers Lists—implicates the exception, the two requirements for mootness are satisfied. The Department has now completed its implementation of the GE requirements to the extent that it was able to do so. Specifically, it has notified institutions offering GE programs that, if they do not adopt early implementation of the 2019 Final Rule, they must comply with the disclosure requirements of 34 C.F.R. § 668.412(d) and (e), and it has completed all steps of the D/E rate calculation for a second year, up to the point where it could go no further due to the unavailability of the necessary SSA earnings data. There is, therefore, no likelihood that the violations that the

States alleged as a result of the asserted delays could recur because there is nothing left that could be delayed, and the effects of the asserted delays have been eradicated to the extent possible.

Nor are the States' claims capable of repetition yet evading review. The States cannot carry their burden to establish either prong of that test. *See Beethoven.com LLC v. Librarian of Cong.*, 394 F.3d 939, 951 (D.C. Cir. 2005) (burden on plaintiffs). First, to be capable of repetition, there must be "a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curiam). To meet this test, plaintiffs must show "not merely a 'physical or theoretical possibility' of recurrence, but a 'reasonable expectation' if not a 'demonstrated probability' that [they] will be subject to the same action." *Pub. Utilities Comm'n of Calif. v. FERC*, 236 F.3d 708, 714 (D.C. Cir. 2001). The "mere power to reenact a challenged policy is not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists." *Larsen*, 525 F.3d at 4. Absent "evidence" that such reissuance is "likely" to happen, this exception cannot overcome a claim's mootness. *Id.*

Here, it is "implausible" that the Department would have gone through "the cumbersome process" of negotiated rulemaking followed by notice and comment, resulting in the rescission of the GE regulations, only to go through that same process again in an effort to reverse the result after this case was resolved. *Initiative & Referendum Inst. v. U.S. Postal Serv.*, 685 F.3d 1066, 1074 (D.C. Cir. 2012). It is even less plausible to suppose that, after going to the trouble of re-promulgating the GE regulations, the Department would then turn around and engage in the same delays in implementing the regulations that the States have sought to allege. The States thus cannot make the first required showing for this exception.

Nor can they make the second: To evade review, the challenged action must be "in its duration too short to be fully litigated" to the Supreme Court "prior to its cessation or expiration."

*Newdow v. Roberts*, 603 F.3d 1002, 1008 (D.C. Cir. 2010). Although "agency actions of less than two years' duration" generally "cannot be 'fully litigated' prior to cessation or expiration," that rule of thumb applies only "so long as the short duration is typical of the challenged action." *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 322 (D.C. Cir. 2009). That is not the case here. Indeed, the GE regulations were subject to several suits in the past, and those were adjudicated on the merits. *E.g., AACS*, 258 F. Supp. 3d 50.

In any event, having failed to seek preliminary relief, the States cannot now claim that this case evaded review. D.C. Circuit precedent "requires a plaintiff to make a full attempt to prevent his case from becoming moot, an obligation that includes filing for preliminary injunctions and appealing denials of preliminary injunctions." *Newdow*, 603 F.3d at 1009. Because the States never sought preliminary relief, they cannot now claim that this case evaded review. *See id.* at 1009-10.

## CONCLUSION

For the foregoing reasons, as well as those set forth in prior briefing, this case should be dismissed in its entirety with prejudice.

Dated: August 9, 2019                  Respectfully Submitted,

JOSEPH H. HUNT
Assistant Attorney General
MARCIA BERMAN
Assistant Director, Federal Programs Branch

 /s/ Kathryn L. Wyer
KATHRYN L. WYER
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W., Room 12014
Washington, DC  20005
Tel.: (202) 616-8475
Fax: (202) 616-8470
Email: kathryn.wyer@usdoj.gov
*Attorneys for Defendants*

20