IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STATE OF MARYLAND, et al.,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF EDUCATION, and ELIZABETH DEVOS, in her official capacity as Secretary of Education,

Defendants.

Civil Action No. 1:17-2139 (KBJ)

**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' SUPPLEMENTAL MOTION TO DISMISS BASED ON MOOTNESS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... iii

INTRODUCTION .......... 1

ARGUMENT .......... 3

I. THE STATES' DISCLOSURE DELAY CHALLENGES SHOULD BE DISMISSED AS MOOT (COUNTS I AND II) .......... 3

II. THE STATES' APPEALS PROCESS CHALLENGES SHOULD BE DISMISSED AS MOOT (COUNTS I AND II) .......... 7

III. THE STATES' COMPLETERS LIST CHALLENGE SHOULD BE DISMISSED AS MOOT (COUNT III) .......... 8

CONCLUSION .......... 10

# TABLE OF AUTHORITIES

## Cases

*Am. Ass'n of Cosmetology Schools* ("*AACS*") *v. DeVos*, 258 F. Supp. 3d 50 (D.D.C. 2017) .......... 7

*Am. Freedom Def. Initiative v. WMATA*, 901 F.3d 356 (D.C. Cir. 2018) .......... 5-6

**Bauer v. DeVos*, 325 F. Supp. 3d 74 (D.D.C. 2018) .......... 7

*Becerra v. U.S. Dep't of Interior*, 276 F. Supp. 3d 953 (N.D. Cal. 2017) .......... 5

*Clean Water Action v. Pruitt*, 315 F. Supp. 3d 72 (D.D.C. 2018) .......... 6

*Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316 (D.C. Cir. 2009) .......... 5

*Garcia v. Acosta*, No. CV 18-1968, 2019 WL 2581324 (D.D.C. June 24, 2019) .......... 4

*Lemon v. Geren*, 514 F.3d 1312 (D.C. Cir. 2008) .......... 10

*Texas v. United States*, 798 F.3d 1108 (D.C. Cir. 2015), *cert denied sub nom. Texas v. Davis*, 136 S. Ct. 981 (2016) (mem.) .......... 8, 9

*Univ. Legal Servs., Inc. v. Dist. of Columbia*, No. 18-CV-0301 (KBJ), 2019 WL 1430045 (D.D.C. Mar. 30, 2019) .......... 4

*Zukerman v. U.S. Postal Serv.*, 384 F. Supp. 3d 44 (D.D.C. 2019), *appeal filed*, No. 19-5168 (D.C. Cir. filed May 31, 2019). .......... 9

## Statutes

Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706 .......... 2

5 U.S.C. § 705 .......... 5

Higher Education Act ("HEA") Title IV, 20 U.S.C. §§ 1070 *et seq.* .......... 1

## Regulations

34 C.F.R. § 668.404 .......... 10

34 C.F.R. § 668.405 .......... 10

34 C.F.R. § 668.412 ........................................................................................................ 1, 3, 4, 8

**Other Administrative Materials**

U.S. Dep't of Educ., Final regulations,
84 Fed. Reg. 31392 (July 1, 2019) ("2019 Final Rule") ........................................... *passim*

**INTRODUCTION**

As explained in Defendants' opening brief, the States' claims here are moot for multiple, overlapping reasons. First and foremost among them is a new final rule (the "2019 Final Rule") issued by the U.S. Department of Education (the "Department") that rescinded the gainful employment ("GE") regulations promulgated under Title IV of the Higher Education Act of 1965 as of July 1, 2020, with an option for early implementation by GE programs prior to that date. Because the States seek to compel the Department's implementation of certain aspects of the GE regulations, the rescission of those regulations necessarily moots those claims. Yet, in their opposition, the States largely ignore the 2019 Final Rule (except to suggest that it might be overturned in future litigation—a wholly speculative notion that cannot possibly sustain their current claims), and they make no attempt to address the significance of the early implementation option. Together, the 2019 Final Rule and its early implementation option prevent the Court from granting meaningful relief here, and the States' claims should be dismissed for that reason alone.

The States' efforts to resist dismissal of their claims are unavailing. The States largely rely on mischaracterizations of the proper scope of those claims. For example, the States now contend that their challenges to the Departments' extension of the deadline for GE programs to comply with certain disclosure requirements, set forth in 34 C.F.R. § 668.412(d) and (e), actually set forth challenges to an alleged "policy and practice" of delaying implementation of rules that the Department seeks to reconsider. But their complaint makes no reference to any such policy or practice, nor can the States establish standing to challenge speculative future delays in the implementation of unspecified rules that might have nothing to do with the States (indeed, as Defendants have argued, the States lack standing even to assert the instant claims). Nor could any such challenges be ripe—as would be required for a policy and practice claim to be deemed not

moot. The situation here is a far cry from typical policy and practice claims, challenging alleged ongoing and recurring failures. The States fail to overcome the fact that the extensions that they sought to challenge have now expired by their own terms. And no meaningful relief could result from a challenge to alleged delays that, by all accounts, have now ended. The States entirely fail to counter the mootness of their claims relating to alternate earnings appeals. Their Counts I and II thus are moot in their entirety.

The States similarly fail to meaningfully contest the mootness of their Count III, which challenged the Department's failure to issue Draft GE Completers Lists—a discrete step in the Department's calculation of debt to earnings ("D/E") rates for GE programs. Again, this claim is moot not only because of the 2019 Final Rule but also for an even more direct reason—that the Department has already issued the Draft GE Completers Lists. The States again seek to escape mootness by turning this challenge into something far broader—an attempt to compel the final result of the multi-step D/E rate calculation process. But their efforts ignore that, so construed, the States' claim would not have met the discrete "agency action" limitation of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, and would necessarily have been unripe at the outset because it would have relied on prerequisite steps that had not yet occurred, some of which require action by third parties rather than the Department.

Moreover, the States fail to address Defendants' argument that the 2019 Final Rule would moot such a claim. Instead, they focus exclusively on the Department's statement, in the 2019 Final Rule and elsewhere, that it is unable to complete the calculation of D/E rates for a second year because the Social Security Administration ("SSA") has not agreed to provide it with aggregate earnings data for GE programs, which the GE regulations require as part of the D/E calculation process. The States' complaint that Defendants have failed to explain SSA's decision

is a red herring, particularly when the States have effectively conceded that the 2019 Final Rule itself renders their alleged broader Count III moot. The decision of the SSA—which is not a party to this case—not to provide such data was unrelated to this litigation, and the States identify no basis to challenge or overturn it through this case. Nor do they explain how the Court could grant meaningful relief with respect to Count III in light of the 2019 Final Rule, schools' option to implement the Rule early, or the Department's inability to calculate D/E rates in any case without SSA data. All of the States' claims therefore are moot and should be dismissed.

## ARGUMENT

### I. THE STATES' DISCLOSURE DELAY CHALLENGES SHOULD BE DISMISSED AS MOOT (COUNTS I AND II)

Defendants have explained that Counts I and II of the States' Amended Complaint are moot. *See* Def. Mem. [ECF 86] at 8–15. Insofar as those counts challenge extensions of the deadline for GE programs to comply with two particular methods of disclosing certain information, as set forth in 34 C.F.R. § 668.412(d) and (e) (the "Disclosure Delay Challenges"), they are moot because both extensions have now expired, and the requirements that the States argued should be in effect are now in effect. Def. Mem. at 8–9. Moreover, the Department has now gone through notice and comment rulemaking with respect to the GE regulations' rescission, making it pointless to go through the same procedure with respect to a delay of one aspect of its requirements. *Id.* at 10. And schools that adopt early implementation of the 2019 Final Rule need not comply with the disclosure requirements—not because of any further delay of the deadline, but because the requirements have effectively already been rescinded with respect to schools adopting early implementation. *See id.* at 9–10. The States' alleged injuries cannot be redressed by setting aside expired extensions of deadlines to meet requirements that are not required for schools that choose early implementation of their rescission. *See id.* at 11–13.

The States attempt to overcome mootness with respect to their Disclosure Delay Challenges by characterizing their claim as a challenge to the Department's alleged "policy" of delay. *See* Pl. Opp. [ECF 87] at 14–15. However, their challenges are not proper "policy and practice claims," as this Circuit understands them. *Cf. Garcia v. Acosta*, No. CV 18-1968, 2019 WL 2581324, at *6 (D.D.C. June 24, 2019). Rather than identifying a supposedly unlawful ongoing "policy"—such as the alleged "policy and practice of ignoring the prevailing wage" when issuing certain work visas, as alleged in *Garcia*, *id.*, or the alleged ongoing "repeated" failures to provide timely access to records of alleged abuse and neglect of children that was at issue in *Univ. Legal Servs., Inc. v. Dist. of Columbia*, No. 18-CV-0301 (KBJ), 2019 WL 1430045, at *6 (D.D.C. Mar. 30, 2019), a case cited by the States—the States focus solely on the Department's extension of one specific deadline—the deadline for schools to comply with 34 C.F.R. § 668.412(d) and (e).[1] Although the States now assert that they challenge "the Department's underlying rationale" that an intent to reconsider a regulatory requirement "empowers the agency, without more, to suspend that requirement," Pl. Opp. at 14, an alleged "rationale" is not the same as an ongoing policy or practice. The States have never suggested that their claims extend beyond the Department's implementation of the GE regulations—which have been rescinded in their entirety by the 2019 Final Rule. Nor can they demonstrate that they would have standing to mount any broader

[1] As the Court in *Univ. Legal Servs.* explained, the scope of the States' claims must be judged on "the plain language" of their Amended Complaint. *Univ. Legal Servs.*, 2019 WL 1430045, at *6. The Amended Complaint clearly characterizes this action as a challenge to "the Department's [alleged] summary and unlawful delay, amendment, and/or rescission of the 'Gainful Employment Rule.'" Am. Compl. ¶ 2. Their Counts 1 and 2, which set forth, respectively, the procedural and substantive claims comprising their Disclosure Delay Challenges, identify only the July 5, 2017 and June 18, 2018 Announcements (which they call the "First Delay Notice" and "Third Delay Notice"—with the "Second Delay Notice" relating only to the Appeals Process Challenges)—as the subjects of their challenge, not any broader policy or practice. *See id.* ¶¶ 105, 114.

challenge to an alleged ongoing policy, or that such a challenge would be ripe—both of which would be required to overcome mootness. *See Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321 (D.C. Cir. 2009).[2]

The Northern District of California case that the States cite, *Becerra v. U.S. Dep't of Interior*, 276 F. Supp. 3d 953, 961 (N.D. Cal. 2017), also presented a different situation. There, the agency had invoked 5 U.S.C. § 705 to delay a rule's effective date and had then rescinded the rule entirely while the delay was still in effect. *Becerra*, 276 F. Supp. 3d at 956. The court noted that it was undisputed that the case was not moot under Article III and held that it would also not dismiss the plaintiff's claim for declaratory relief under the doctrine of prudential mootness because it was foreseeable that the defendants might attempt to use § 705 in the same manner in the future. *Id.* at 960. Unlike in *Becerra*, the States' Disclosure Delay Challenges are moot under Article III—among other reasons because the disclosure requirement at issue is no longer delayed, but is in effect for schools that have not adopted early implementation of the 2019 Final Rule. The Court therefore cannot decline to hold the claims moot on equitable grounds.

The States' next attempt to avoid the mootness of their case by invoking the voluntary cessation doctrine should be rejected out of hand. For one thing, the Department did not take any voluntary action to stop the alleged "delay" of the disclosure requirements at issue; rather, the challenged extension expired on its own terms. The mere fact that the Department did not issue another extension is not a voluntary action "of the defendant's own doing," so as to implicate the voluntary cessation doctrine. *See Am. Freedom Def. Initiative v. WMATA*, 901 F.3d 356, 362 (D.C.

---

[2] The claim at issue in *Del Monte*, which the States also cite, was *not* a policy and practice claim, but the court held that the claim was not moot under the "capable of repetition yet evading review" exception to mootness. *Id.* at 326. That exception does not apply here, as explained in Defendants' opening brief and below.

Cir. 2018). And the actions that the Department did take, contributing to mootness—its rescission of the GE regulations in the 2019 Final Rule and the early implementation option—do not qualify as a "cessation" of the challenged conduct at all, much less a cessation designed to frustrate judicial review, which the voluntary cessation doctrine seeks to prevent. *See id.*[3]

The States' further assertion that the 2019 Final Rule is likely to be overturned in another case—and that this prospect not only prevents dismissal of the Disclosure Delay Challenges under the voluntary cessation doctrine but also makes their claims capable of repetition yet evading review, *see* Pl. Opp. at 17–18—is entirely speculative. It is based on a purely hypothetical lawsuit, with a hypothetical unidentified plaintiff with standing, and cannot possibly suffice to save the States' claims from dismissal as moot. Nor do the States make any genuine attempt to show that future challenges to alleged delays in implementation of the disclosure requirements would necessarily evade review. They instead rely on their dubious attempt to shoe-horn this case into a policy and practice claim and speculate that delays in entirely different, unspecified circumstances "could easily 'evade review'" because "in some cases only a very brief delay" would suffice to "run[] out the clock" while a regulation is repealed or replaced. *Id.* at 18. This bald, unsupported assertion in no way justifies applying the "capable of repetition" exception here.

---

[3] Even if the voluntary cessation doctrine were applicable here, the notion that the States continue to be impacted by the challenged disclosure extensions falls flat. The States never established any causal connection between the disclosure extensions and their asserted injuries in the first place—which is one reason that they lack standing to pursue these claims. Their suggestion that, for example, the closure of a particular chain of for-profit schools can be traced to these extensions, and that their alleged expenditure of resources also results from the extensions, Pl. Opp. at 17-18, is far-fetched, and Defendants do not have to disprove such speculative theories in order to show that the voluntary cessation doctrine does not apply. *Clean Water Action v. Pruitt*, 315 F. Supp. 3d 72, 89–90 (D.D.C. 2018) (rejecting similar speculative arguments).

## II. THE STATES' APPEALS PROCESS CHALLENGES SHOULD BE DISMISSED AS MOOT (COUNTS I AND II)

Insofar as Counts I and II relate to alternate earnings appeals—referred to in Defendants' opening brief as the "Appeals Process Challenges," *see* Def. Mem. at 14–15—they should also be dismissed as moot. As explained in Defendants' opening brief and above, the States' procedural claim in Count I is moot because the Department has now gone through negotiated and notice and comment rulemaking in connection with the GE regulations as a whole, and rescinded the regulations. *Cf. Bauer v. DeVos*, 325 F. Supp. 3d 74, 92 (D.D.C. 2018). Defendants also explained that the States' substantive claim in Count II is moot because the extended deadline that they challenged has now passed; schools already submitted their appeals relying on the criteria mandated by the court's opinion in another case, *AACS v. DeVos*, 258 F. Supp. 3d 50 (D.D.C. 2017); the Department has already issued decisions on many of the submitted appeals applying those criteria; and even if it were possible to determine what the schools' submissions, and the Department's decisions, would have been if the Department had not adopted the *AACS* criteria, any resulting changes to the final D/E rates for particular GE programs would have no practical effect because of the 2019 Final Rule's rescission of the GE regulations, and its authorization of early implementation. Def. Mem. at 14–15. Indeed, it seems particularly likely that any schools with GE programs facing negative impacts under the GE regulations have already adopted early implementation of the regulations' rescission. Thus, the Court can grant no meaningful relief with respect to the Appeals Process Challenges, and any decision on those challenges would not redress the States' alleged injuries, even assuming that the States had identified cognizable injuries fairly traceable to the challenged appeals process changes sufficient to sustain their standing to raise these claims in the first place (which, of course, they never did).

In their opposition, the States inexplicably refuse to acknowledge Defendants' arguments.

Instead, the States purport to chastise Defendants for ignoring that aspect of their claims, *see* Pl. Opp. at 12–13—even though Defendants did no such thing. The States' opposition states in cursory fashion that their claims regarding the alternate earnings appeals are distinct from their claims regarding the disclosure requirements in 34 C.F.R. § 668.412(d) and (e), and were "unaffected" by the expiration of the disclosure delay extension. But that obvious fact in no way responds to Defendants' arguments, detailed above. To the extent the States fail to address, or even acknowledge, Defendants' arguments, the arguments should be deemed conceded. *Texas v. United States*, 798 F.3d 1108, 1110 (D.C. Cir. 2015) (recognizing that LCvR7(b) is "understood to mean that if a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded") (internal quotation omitted), *cert denied sub nom. Texas v. Davis*, 136 S. Ct. 981 (2016) (mem.). The States otherwise baldly assert "[t]he passage of time and the resolution of appeals" has not mooted their claims, but they fail to address how a decision by the Court could provide meaningful relief with respect to their asserted injuries, in light of the rescission of the GE regulations. The Court therefore should dismiss these claims as moot.

## III. THE STATES' COMPLETERS LIST CHALLENGE SHOULD BE DISMISSED AS MOOT (COUNT III)

With respect to their Completers List challenge in Count III, the States concede that the Draft Completers Lists were provided to schools well over a year ago and make no attempt to contest the mootness of their challenge in that respect. Pl. Opp. at 10–11. The States do, however, continue to press the notion that their claim extends beyond the issuance of the Draft Completers Lists, such that as soon as the Department completes one step of the D/E calculation, their claim immediately and automatically transforms into a challenge that the next step in the calculation process is unreasonably delayed—regardless of the fact that some of the steps require actions of

third parties, rather than the Department, as well as the fact that any "delay" in the completion of a subsequent step cannot possibly be unreasonable if the prerequisite steps have not yet occurred. Of course, as previously explained, such a notion is contrary to the APA's "agency action" limitation as well as to principles of ripeness. *See* Def. Mem. at 16 & n.6. Thus, the States' Count III should be dismissed as moot based on the States' concession alone. *Texas*, 798 F.3d at 1110.

The States otherwise claim that Defendants have not explained why the Department's inability to obtain SSA aggregate earnings data, or to calculate D/E rates in accord with the GE regulations, renders their purported broader challenge moot. However, that challenge is moot because the Department has rescinded the GE regulations in the 2019 Final Rule, and because it has also authorized schools to adopt early implementation of the rescission. Def. Mem. at 16 (incorporating arguments set forth earlier in the brief that the Department's "rescission of the GE regulations and its authorization of early implementation" render the States' claims moot); *see also Zukerman v. U.S. Postal Serv.*, 384 F. Supp. 3d 44, 54 (D.D.C. 2019) ("[I]t is a perfectly uncontroversial and well-settled principle of law that rescinding and replacing a challenged regulation moots litigation over the original regulation." (internal quotation omitted)).[4] The States fail to contest that basis for mootness, nor do they contest, with respect to this claim, Defendants' explanations that the exceptions to mootness do not apply. The States thus concede these arguments, *Texas*, 798 F.3d at 1110, and those concessions alone suffice to dismiss the States' alleged broader claim in Count III.

The SSA's decision is simply an additional factor demonstrating that the Court cannot provide meaningful relief. Although the States argue that the unavailability of SSA data cannot be

[4] The States err in asserting that the Department "does not dispute that it has a legal obligation" to calculate D/E rates at least until July 1, 2020. Pl. Opp. at 10. The Department has no such obligation for schools that have adopted early implementation.

raised in a motion to dismiss on mootness grounds, Pl. Opp. at 11–12, the SSA's decision certainly qualifies as an "intervening event" that makes it "impossible" for the Court to grant the States effective relief even if they were to prevail. *Lemon v. Geren*, 514 F.3d 1312, 1315 (D.C. Cir. 2008). It thus is relevant and can be considered by the Court in its mootness analysis.[5] The GE regulations expressly require the Department to use SSA data in calculating D/E rates, 34 C.F.R. § 668.405(a)(3), (d), and in fact, they expressly provide that the Department will *not* calculate D/E rates for programs for which the SSA has not provided such data, *id.* § 668.404(f)(2). The Department explained in the 2019 Final Rule that it learned of the SSA's decision only after the latest negotiated rulemaking regarding the GE regulations had occurred, and that it was then faced with the decision of whether to initiate a new negotiated rulemaking in order to explore revising the regulation requiring that SSA data be used for the D/E calculation. *See* 84 Fed. Reg. at 31392–93. The Department reasonably decided not to initiate a new negotiated rulemaking in light of its decision to rescind the GE regulations. *Id.* at 31393. Neither of those decisions are under review in the instant case. To the extent the States' arguments depend on the notion that those decisions are flawed, they are beside the point. The States' Count III therefore should be dismissed as moot.

## CONCLUSION

For the foregoing reasons, as well as those set forth in prior briefing, this case should be dismissed in its entirety with prejudice.

Dated: September 27, 2019

Respectfully Submitted,

JOSEPH H. HUNT

[5] The Court can take judicial notice of the 2019 Final Rule, *Sierra Club v. Perry*, 373 F. Supp. 3d 128, 132 n.3 (D.D.C. 2019), and can also consider it because mootness implicates the Court's subject matter jurisdiction, *Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.,* 514 F. Supp. 2d 89, 92 (D.D.C. 2007). The States identify no legitimate basis to question the accuracy of the Rule's description of the SSA's decision not to provide aggregate earnings data to the Department.

Assistant Attorney General
MARCIA BERMAN
Assistant Director, Federal Programs Branch

_/s/ Kathryn L. Wyer________
KATHRYN L. WYER
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W., Room 12014
Washington, DC 20005
Tel.: (202) 616-8475
Fax: (202) 616-8470
Email: kathryn.wyer@usdoj.gov
*Attorneys for Defendants*