## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| STATE OF MARYLAND, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 17-cv-2139 (KBJ) |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| EDUCATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION ON REMAND AFTER VACATUR
## OF THIS COURT'S PRIOR DISMISSAL ORDER AND OPINION

A Special Panel of the D.C. Circuit has dismissed Plaintiffs-Appellants' ("the States'") appeal by consent of the parties on mootness grounds, and has also summarily granted the States' motion for vacatur of this Court's order and memorandum opinion that had dismissed the States' claims for lack of Article III standing. *See* Order, *Maryland v. U.S. Dep't of Educ.*, No. 20-5268 (D.C. Cir. Dec. 22, 2020) ("D.C. Cir. Vacatur Order"); *see also Maryland v. U.S. Dep't of Educ.*, No. 17-cv-2139 (KBJ), 2020 WL 4039315, at *1 (D.D.C. July 17, 2020). The Panel's unpublished per curiam order has no precedential value. *See* D.C. Cir. R. 36(e)(2). But it does have an effect. By employing the Circuit's "general practice" of vacating a district court order and remanding the case with instructions to dismiss when a pending appeal is deemed moot, *see Planned Parenthood of Wisconsin, Inc. v. Azar*, 942 F.3d 512, 519 (D.C. Cir. 2019) (citing *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950)), the Panel has authorized the States to argue before the district court that their claims are *not* moot,

and then, if the district court rules against them, file an appeal that concedes mootness at the district court level in service of a request for vacatur of the district court's non-favorable order and opinion.  Under the circumstances presented here, the Circuit's vacatur practice also leaves in its wake considerable confusion regarding whether or not a district judge *must* address potential mootness problems in a case if there are ostensibly alternative bases for ruling that the court has no subject-matter jurisdiction, and appears to have resulted in the seemingly unnecessary nullification of a district court's contribution to the body of common law reasoning concerning Article III standing, when the court of appeals has neither reached the merits of the district court's standing determination nor explained its apparent conclusions regarding the underlying mootness question.

The instant Memorandum Opinion accompanies an order that dismisses the States' claims on mootness grounds (in lieu of this Court's now-vacated prior order dismissing the States' claims for lack of standing) as the Panel has directed, and is an effort to explain, from the standpoint of the district court, how indiscriminate application of a vacatur practice when mootness is asserted on appeal rewards gamesmanship concerning complex mootness questions, raises the specter of the kind of end-run around established norms of appellate procedure that the Supreme Court warned about four decades after *Munsingwear*, *see U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 27 (1994), and has significant downstream consequences.

**I.**

To understand why the application of this Circuit's general vacatur practice to the instant circumstances is problematic and puzzling, one must first be somewhat familiar with the basic background facts and procedural history of this case, as well as the particular mootness arguments that each party asserted both at the district court level and shortly after the States filed their notice of appeal.

**A.**

Eighteen state attorneys general filed the instant legal action against the United States Department of Education ("the DOE") in 2017, to challenge the DOE's decision to delay implementation of a rule that the agency had promulgated when it was controlled by a prior presidential administration. The DOE and its Secretary, Arne Duncan, had promulgated the States' preferred policy—known as the Gainful Employment Rule ("GE Rule")—in 2014, to counteract the deceptive marketing that certain for-profit colleges and universities use to entice students to take on large amounts of debt in order to pursue what can turn out to be worthless degrees or credentials. *See* Program Integrity: Gainful Employment, 79 Fed. Reg. 64,890, 64,890– 92 (Oct. 31, 2014). Broadly speaking, the GE Rule required for-profit educational institutions that receive federal financial assistance to disclose certain information about their programs to the DOE and to prospective students, and imposed penalties on programs that regularly leave low-income graduates with overwhelming debt loads. *See Maryland*, 2020 WL 4039315, at *2–5.[1]

---

[1] Offending institutions were identified via a complex formula that the GE Rule established, which involved calculating what the rule termed "debt-to-earnings rates"—statistics that generally measure "the proportion of a GE Program graduate's income [that] is spent on loan payments[.]" *See Maryland*, 2020 WL 4039315, at *4.

The GE Rule first became effective on July 1, 2015, *see* 79 Fed. Reg. at 64,890, but a series of lawsuits forestalled its immediate implementation, *see Maryland*, 2020 WL 4039315, at *5, and when new leadership took over the DOE after the change of presidential administrations in 2017, "the agency changed course" with respect to its support for the GE Rule, *id.*; *see also id.* at *5–7 (describing how the DOE issued several notices repeatedly delaying compliance deadlines under the GE Rule until July 1, 2019, and how the agency made various substantive changes to compliance expectations concerning the rule's requirements).  The subsequent implementation delays and rule-requirement changes were the impetus for the States' filing of the instant lawsuit against the DOE and its Secretary, Elisabeth DeVos, in her official capacity, and the States' three-count complaint specifically alleged that the DOE had violated the Administrative Procedure Act ("APA") in various ways.  (*See, e.g.*, Compl., ECF No. 1, ¶ 2 ("In delaying and refusing to enforce the Rule, the [DOE] failed to engage in notice and comment rulemaking, failed to provide a justification for its actions, acted arbitrarily and capriciously and in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, and withheld or unreasonably delayed agency action, all in violation of the APA.").)

The parties proceeded to file cross-motions for summary judgment on both the States' claims and the significant threshold issue of whether the States had an injury-in-fact that was sufficient to support Article III and prudential standing.  *See Maryland*, 2020 WL 4039315, at *6–7.  In the meantime, however, "the DOE published a notice of proposed rulemaking that notified the public of the agency's intention to rescind the 2014 GE Rule altogether[,]" *id.* at *7 (citing 83 Fed. Reg. 40,167, 40,168 (Aug. 14,

2018)), and the agency proceeded to promulgate this total rescission policy as a rule on July 1, 2019, *id.* (citing 84 Fed. Reg. 31,392, 31,393 (July 1, 2019)).  Critically, however, the rule's *effective date* was one year later—on July 1, 2020, *id.* (citing 84 Fed. Reg. at 31,393)—and between the 2019 promulgation of the rescission rule and the 2020 effective date, "the Secretary exercised her discretion to designate the Rescission Rule for early implementation, at the discretion of each institution[,]" *id.*

In response to these seemingly significant developments, this Court construed the DOE's July 10, 2019, notice of the agency's promulgation of the rescission rule "as a motion for leave to file a supplemental motion to dismiss on mootness grounds, which the Court [then] granted, and the agency proceeded to file said motion to dismiss, which the States opposed." *Id.* (citations omitted).  (*See also* Defs.' Notice of Admin. Action and Suggestion of Mootness, ECF No. 85, at 1–2; Min. Order of July 12, 2019.)[2]  The DOE's motion to dismiss asserted that all of the States' APA claims concerning the delayed implementation of and the post-promulgation adjustments to the GE Rule were moot, primarily due to the agency's promulgation of the rescission rule.  (*See* Defs.' Mem. in Supp. of Suppl. Mot. to Dismiss Based on Mootness, ECF No. 86-1, at 6.)

For instance, as to the States' challenges to the DOE's delays in implementing the GE Rule's disclosure requirements, the agency's motion to dismiss noted that "the last challenged delay has now expired[,]" and that, in any event, "the rescission of the GE regulations in their entirety . . . , together with the Secretary's authorization of early implementation, also serve to moot" those claims, because "'rescinding and replacing a challenged regulation moots litigation over the original regulation[.]'" (*See id.* at 13–

---

[2] Page-number citations to the documents that the parties have filed refer to the page numbers that the Court's electronic filing system automatically assigns.

14 (quoting *Zukerman v. U.S. Postal Serv.*, 384 F. Supp. 3d 44, 54 (D.D.C. 2019)).)
Likewise, to the extent that the States sought to compel the DOE to continue identifying
offending institutions by calculating debt-to-earnings rates, the DOE asserted that "any
such claim is also moot" because "after the GE regulations at issue took effect, [debt-
to-earnings] rates were only calculated for one year, and that will be the only year that
final [debt-to-earnings] rates can ever be calculated, due to the rescission of the GE
regulations[.]" (*See id.* at 19–22.)

In their opposition to the DOE's motion to dismiss, the States strenuously
maintained that the scheduled rescission of the GE Rule did not moot any of their
claims, for essentially three reasons. (*See* Pls.' Mem. in Opp'n to Defs.' Suppl. Mot. to
Dismiss Based on Mootness, ECF No. 87, at 6–7.) First, the States asserted that their
"challenge to the Department's refusal to act . . . is plainly not moot[,]" because "the
Department continues to have legal obligations under the Gainful Employment Rule,
and its failure to carry out those obligations renders its continued conduct unlawful"—
"at least until July 1, 2020." (*See id.* at 13–14; *see also id.* at 21 ("[T]he Rule will
remain in effect until July 1, 2020, under any circumstances.").) Second, the States
claimed that the agency's "argument rests entirely on the assumption that the Repeal
Rule will either not be challenged in court or will survive judicial review fully intact[,]"
a premise that the States characterized as "doubtful[.]" (*See id.* at 21.) Third, the
States suggested that the DOE's repeated implementation delays amounted to an
"ongoing policy" of refusing to implement validly promulgated rules, which "could
easily recur" in another "situation that causes harm to the States." (*See id.* at 18, 22
(internal quotation marks and citation omitted).)

This Court held a hearing with respect to the DOE's motion to dismiss on January 9, 2020 (*see* Tr. of Mot. Hr'g, ECF No. 104), during which the States continued to maintain that their claims were not moot despite the upcoming rescission of the GE Rule (*see, e.g.*, *id.* at 37 ("[T]hey have to implement this rule.  They don't have to like it, but it's a rule on the books, and they have to implement it until it's no longer a rule anymore."); *id.* at 56–57 ("[A]s far as evading review . . . this is kind of a pattern and practice throughout the department" to "issu[e] new delay notices when those expire until they run out the clock on the rule that they're trying to rewrite.")).  In addition, on January 24, 2020, and April 10, 2020, the States notified this Court that two lawsuits had been filed challenging the DOE's rule rescinding the GE Rule, presumably to demonstrate that there was still a live controversy due to the prospect that the rescission rule could be held unlawful.  (*See* Pls.' Notice of New Filing and Suppl. Auth., ECF No. 103; Pls.' Second Notice of New Filing, ECF No. 105.)[3]

On June 26, 2020—prior to the July 1st effective date of the rescission of the GE Rule—this Court issued an order that granted the DOE's motion to dismiss the States' complaint, not for mootness but for lack of Article III standing.  (*See* Order ("Dismissal Order"), ECF No. 106, at 2.)  The Court's Order expressly stated that the claims were being dismissed because "the States lack Article III standing to bring the instant legal claims[,]" and the Court further noted that its reasoning would be set forth fully "in a Memorandum Opinion to be issued soon, absent unforeseen circumstances."  (*Id.*)  The Order also stated that "[t]his Order shall not be deemed a final order subject to appeal

---

[3] The States also filed a separate legal action in *this* Court to challenge the rescission rule under the APA.  *See Pennsylvania v. DeVos*, No. 20-cv-1719 (KBJ) (D.D.C., filed June 24, 2020).

until the Court has issued its Memorandum Opinion." (*Id.* (citing *St. Marks Place Hous. Co. v. U.S. Dep't of Hous. & Urban Dev.*, 610 F.3d 75, 80–82 (D.C. Cir. 2010)).)

The Court issued its Memorandum Opinion on July 17, 2020, and thereby fully "explain[ed] the reasons for [its June 26, 2020] Order." *See Maryland*, 2020 WL 4039315, at *1. The nearly 50-page discussion detailed the legal analysis that underlay the Court's conclusion that "the States ha[d] not established a cognizable injury to their nonsovereign interests for the purpose of Article III standing, given that each of the States' alleged injuries is either too speculative to qualify as an injury in fact for standing purposes or is self-inflicted, and is therefore not fairly traceable to the DOE's actions[,]" and the Court explained further "that Congress has not given the States permission to rely upon the doctrine of *parens patriae* standing for APA claims such as those in the instant complaint." *Id.* at *11. The Court also recounted the intervening developments that had precipitated the DOE's motion to dismiss on mootness grounds, and described the parties' respective arguments regarding mootness, but did not resolve that issue. *See id.* at *7–8.

### B.

Some of the Plaintiff States filed a notice of appeal concerning this Court's order and memorandum opinion on August 25, 2020 (*see* Notice of Appeal, ECF No. 108, at 1), and additional States filed a separate notice of appeal on September 14, 2020 (*see* Notice of Appeal, ECF No. 111, at 1).

Then, on September 25, 2020, the Appellant States filed a "Suggestion of Mootness and Motion for *Munsingwear* Vacatur" in the court of appeals. (*See* Appellant States' Suggestion of Mootness and Mot. for *Munsingwear* Vacatur at 1

("Pls.' Vacatur Mot."), *Maryland v. U.S. Dep't of Educ.*, No. 20-5268 (D.C. Cir. Sept. 25, 2020).)  The States asserted that "[t]his case challenged actions by the U.S. Department of Education that no longer have effect[,]" and they thus both "suggest[ed] that the case is moot and request[ed] that the Court vacate the district court's order and opinion and remand the case with instructions to dismiss the case as moot, consistent with *United States v. Munsingwear*, 340 U.S. 36 (1950)."  (*Id.* at 2.)  In so requesting, the States observed that, "[s]oon after the district court granted the Department's motion to dismiss, the Repeal Rule took effect[,]" which "eliminates entirely the regulatory requirements that the Department was unreasonably delaying, thus depriving the delay notices of any force."  (*Id.* at 4.)  "And while there are several suits challenging the Repeal Rule, including two brought by some of the States here," the States noted, "the Repeal Rule has not been enjoined or vacated."  (*Id.* at 4–5.)  Thus, according to the States, "the Repeal Rule has mooted this case."  (*Id.* at 5.)

The States also argued that "vacatur is fair because mootness resulted from the Repeal Rule, a circumstance outside the States' control."  (*Id.* at 6.)  They further contended that "vacatur will clear the path for future litigation of similar issues in a pending challenge to the Repeal Rule itself[,]" and asserted that "vacatur is particularly appropriate" because this Court's order and memorandum opinion "address state standing under Article III to sue the federal government, which implicates unsettled issues of federalism and the balance of power between competing sovereigns."  (*Id.*)

In its response to the States' motion to vacate, the DOE "agree[d] that the matter is moot" but "d[id] not agree that vacatur is warranted."  (*See* Resp. to Appellants' Suggestion of Mootness and Mot. to Vacate at 1, *Maryland v. U.S. Dep't of Educ.*, No.

20-5268 (D.C. Cir. Oct. 6, 2020).)  According to the agency, "plaintiffs' challenge became moot before—not after—the district court issued its final judgment on July 17, 2020[.]"  (*Id.*)  And the DOE argued that "'the conditions and circumstances of [this] particular case' do not favor the equitable remedy of vacatur."  (*Id.* at 2 (quoting *Azar v. Garza*, 138 S. Ct. 1790, 1792–93 (2018) (per curiam)).)  In particular, the DOE emphasized that the States had opposed the agency's motion to dismiss for mootness in the district court, on the basis that "their case would remain alive even after the Gainful Employment regulations were rescinded because it would remain possible that the 2019 rescission rule would be successfully challenged."  (*Id.* at 3–4.)  Thus, the agency pointed out, the district court had issued its opinion and order "because of circumstances within [the States'] control—namely, [the States] chose to press their case, refusing (until now) to concede that it became moot on July 1."  (*Id.* at 5.)  The DOE further maintained that "[e]xercising the Court's discretion here to grant vacatur would serve to encourage litigants to press moot claims with the assurance that a loss can be 'undone' under *Munsingwear*."  (*Id.*)  And, finally, the agency disputed that vacatur was necessary to "clear the path for future litigation of similar issues[,]" observing that this Court's decision was "that of a district court, and one that disposed of the case on jurisdictional grounds[,]" and thus "has no[] preclusive effect."  (*Id.* at 5–6.)

The States' reply maintained that "the event that mooted the case"—the effective date of the rescission rule—"happened after the district court had dismissed the case on Article III grounds" in its June 26 order.  (Reply in Supp. of Appellant States' Suggestion of Mootness and Mot. for *Munsingwear* Vacatur at 3 ("Pls.' Vacatur

Reply"), *Maryland v. U.S. Dep't of Educ.*, No. 20-5268 (D.C. Cir. Oct. 13, 2020).)  The

States also asserted that the DOE's "fear that vacating the decision below would

encourage plaintiffs to litigate moot cases is misplaced[,]" because "this Court has

advised district courts to avoid altogether the circumstance needed for the sort of

conduct that the Department fears—namely, issuing an order followed later by an

opinion that makes the prior order appealable." (*Id.* (citing *St. Marks*, 610 F.3d at 81).)

Finally, the States "agree[d] that the decision below does not have preclusive effect on

any other litigation," but asserted that "the decision below still may impair future

litigation" because "States' standing to sue the federal government is a commonly

litigated question and one that is about to be briefed—based on similar theories of

standing that were addressed below—in the same district court." (*Id.* at 4.)

C.

A Special Panel of the D.C. Circuit issued a per curiam order granting the States'

motion for vacatur on mootness grounds on December 22, 2020.  (*See* D.C. Cir. Vacatur

Order at 1.)

In its entirety, the order reads as follows:

> Upon consideration of the suggestion of mootness and motion for vacatur, the response thereto, and the reply, it is

> **ORDERED** that the motion for vacatur be granted and the appeal be dismissed as moot.  *See, e.g.*, *Planned Parenthood of Wisconsin, Inc. v. Azar*, 942 F.3d 512, 516 (D.C. Cir. 2019).  The district court's June 26, 2020 order and July 17, 2020 memorandum opinion are hereby vacated, and the case is remanded to the district court with instructions to dismiss the case as moot.  *See U.S. Bancorp Mortg. Co. v. Bonner Mall Partnership*, 513 U.S. 18, 23 (1994); *Maydak v. United States*, 630 F.3d 166, 177 (D.C. Cir. 2010).

> Pursuant to D.C. Circuit Rule 36, this disposition will not be published.  The Clerk is directed to issue the mandate forthwith to the district court.

11

(*Id.* at 1–2.)

## II.

Consistent with the Special Panel's per curiam directive, this Court's order and opinion dismissing the States' claims for lack of Article III standing have been vacated, and a separate Order that dismisses the States' claims on mootness grounds will follow. But it is clear beyond cavil that moot cases are to be disposed of on appeal "in the manner most consonant to justice . . . in view of the nature and character of the conditions which have caused the case to become moot." *U.S. Bancorp*, 513 U.S. at 24 (internal quotation marks and citation omitted). And the conditions that prompted the Special Panel to vacate this Court's prior dismissal order and direct the Court to issue a dismissal order that reflects the mootness of the States' claims remain entirely unclear, both because the States vigorously maintained that the DOE's rescission rule did *not* moot their claims when the case was at the district court level, and also because the Panel has not provided its *reasons* for overlooking the States' grand reversal of their prior position on mootness. Moreover, and significantly for present purposes, the Circuit's reasons *matter*, because permitting a losing plaintiff who argues non-mootness below to file a notice of appeal that knowingly anticipates a mootness concession in service of a motion for vacatur of a district court's judgment raises several significant questions that have implications for the district court's work in addressing suggestions of mootness, and that also affect the manner in which the parties are likely to comport themselves with respect to similar issues moving forward.

For example, as relevant here, the Special Panel's unexplained vacatur of this Court's Article III standing opinion begs at least the following questions (in the mind of

a district judge who is interested in both addressing the most salient concerns in the first instance and avoiding costly inefficiencies in our judicial process): (1) *when* did the States' legal claims become moot—assuming, of course, that the Panel agrees with the parties' current consensus on the mootness question—*i.e.*, were the States' APA claims concerning delay in the implementation of the GE Rule mooted on the date that the DOE promulgated a replacement rule, or on the date when that newly promulgated rule became effective?[4]; (2) does the fact that this Court ordered dismissal of the States' claims on June 26, 2020 (before the July 1st effective date of the DOE's rescission rule) but its full explication of that ruling was delivered to the parties in the form of a 48-page opinion on July 17, 2020 (after the rescission rule became effective) matter for mootness purposes, as the States suggest, and if so, why?[5]; and (3) is mootness still an alternative and fully independent ground for finding that the district court lacks subject-matter jurisdiction over a plaintiff's claims, *see Worth v. Jackson*, 451 F.3d 854, 857 (D.C. Cir. 2006), such that this Court's prior dismissal of the States' claims for lack of Article III standing sufficed to resolve this case notwithstanding any potential mootness defect?

---

[4] As the nation gears up for the anticipated, imminent change of presidential administrations on January 20, 2021, it is not inconceivable that similar mootness issues may arise with respect to litigation that is currently pending in district court, if new agency heads announce departures from existing administrative actions.

[5] There are practical reasons why a district judge might opt to issue an order standing alone, with the opinion to follow, the most obvious of which is the existence of a looming deadline that might have implications for the legal issues in a case. The concern that the Circuit has previously expressed regarding this practice involved a circumstance in which having different order and opinion dates confused the parties with respect to their appellate rights, insofar as it implicated the question of the point at which those rights vested. *See St. Marks*, 610 F.3d at 81–82. This Court's carefully worded statement that "[t]his Order shall not be deemed a final order subject to appeal until the Court has issued its Memorandum Opinion" (Dismissal Order at 2 (citing *St. Marks*, 610 F.3d at 80–82)) was intended to ensure that no such confusion arose in the context of the instant case, and was apparently successful in that regard.

In the absence of the answers to such questions, it is difficult to comprehend the basis for the Circuit's vacatur of this Court's prior dismissal order and the opinion that explained it, as is necessary to avoid being lured into wrestling with complex yet ultimately irrelevant legal questions concerning the scope of the Court's subject-matter jurisdiction in the future.  And it is also hard to see how the nullification of a prior order of the district court that dismisses a plaintiff-appellant's claims, followed by the requirement that that court dismiss the claims (again), this time on mootness grounds, advances any of the principles that undergird the vacatur doctrine that the Supreme Court first articulated in *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950).

It is certainly true that, in *Munsingwear*, the Supreme Court observed that "[t]he established practice of the Court in dealing with a civil case from a court in the federal system which has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss."  *Munsingwear*, 340 U.S. at 39.  That practice, as the *Munsingwear* Court explained it, "clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance."  *Id.* at 40.  But the Supreme Court's concern about the continued adverse effect of a lower-court judgment on the party seeking appellate review when the judgment becomes "unreviewable because of mootness," *id.* at 41, seems inapposite where, as here, the lower court's judgment has no preclusive effect, is not a binding precedent (and is thus not prejudicial in any meaningful sense), and has precisely the same effect as a *Munsingwear* directive in the long run, insofar as the order that is subject to vacatur is one that dismisses the plaintiff-appellant's claims (albeit on other grounds).

The Supreme Court has also more recently emphasized that "the portion of Justice Douglas' opinion in *Munsingwear* describing the 'established practice' for vacatur was dictum[,]" *U.S. Bancorp*, 513 U.S. at 23, and has further clarified that a losing party is not automatically entitled to vacatur of the lower-court judgment when its appeal becomes moot.  Instead, it is the "burden" of "the party seeking relief from the status quo of the [lower-court] judgment" to demonstrate "equitable entitlement to the extraordinary remedy of vacatur[,]" which includes a showing that vacatur is in "the public interest."  *Id.* at 26; *see also id.* (explaining that "[j]udicial precedents are presumptively correct and valuable to the legal community as a whole"; "[t]hey are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur" (internal quotation marks and citation omitted)); *id.* at 27 (suggesting that indiscriminate vacatur of lower-court decisions "would—quite apart from any considerations of fairness to the parties—disturb the orderly operation of the federal judicial system").

Thus, modern Supreme Court precedent plainly invites a case-by-case analysis of whether vacatur of a lower court's judgment is equitable and in the public interest.  *See id.* at 25 (explaining that "[t]he reference to 'happenstance' in *Munsingwear* must be understood as an allusion to this equitable tradition of vacatur"); *see also, e.g.*, *Garza*, 138 S. Ct. at 1792 (explaining that the decision whether to vacate a lower-court judgment "is rooted in equity" and thus ultimately "turns on 'the conditions and circumstances of the particular case'" (citation omitted)); *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 194 n.6 (2000) (observing that "mootness attributable to a voluntary act of a nonprevailing party ordinarily does not

justify vacatur of a judgment under review"); *Alvarez v. Smith*, 558 U.S. 87, 94–97 (2009) (ordering vacatur after assessing case-specific circumstances and concluding that "this case more closely resembles mootness through 'happenstance' than through 'settlement'").[6] But, here, the Special Panel's per curiam order offers no clues as to *which* of the various circumstances presented in the instant set of case-specific facts warrants vacatur of this Court's prior order and opinion in order to promote equity or the public's interest.

This Court respectfully submits that, under the present circumstances, the States are not entitled to claim unfairness if the prior judgment dismissing their claims is not vacated, nor is vacatur in the public interest, for at least two reasons. First, and foremost, given that the States vigorously disputed that the DOE's promulgation of the rescission rule rendered the litigation moot when the case was before this Court and only changed their tune regarding mootness after their claims had already been dismissed for lack of standing, they are by no means victims of "happenstance" with respect to the mootness of their claims; instead, they forcefully assumed the risk that this Court would proceed (at their insistence) and rule against them. Put another way, the States had every opportunity to avoid an unfavorable judgment at the district court

---

[6] Other courts of appeals have recognized the Supreme Court's post-*Munsingwear* position and have acted accordingly. For instance, according to the Fifth Circuit, the Supreme Court has "stepped back from the 'automatic' vacatur that almost invariably had followed a finding of mootness on appeal." *Staley v. Harris Cnty.*, 485 F.3d 305, 310 (5th Cir. 2007) (en banc). Thus, the Fifth Circuit now "look[s] at the equities of the individual case" and asks whether the party seeking vacatur has "carried its burden of demonstrating an 'equitable entitlement to the extraordinary remedy of vacatur[.]'" *Id.* at 312, 314 (quoting *U.S. Bancorp*, 513 U.S. at 26). Likewise, the Eleventh Circuit has underscored "the equitable nature of the Supreme Court's *Bancorp* inquiry"; for instance, in the context of mootness due to settlement, the Eleventh Circuit has instructed courts to "weigh[] the benefits of settlement to the parties and to the judicial system (and thus to the public as well) against the harm to the public in the form of lost precedent[,]" which "will vary case by case." *Hartford Cas. Ins. Co. v. Crum & Forster Specialty Ins. Co.*, 828 F.3d 1331, 1336 (11th Cir. 2016).

level, and could have done so easily by merely conceding the seemingly obvious: that the DOE's rescission rule had mooted their claims.  To the contrary, they chose to roll the dice with respect to receiving a ruling from this Court, and then proceeded to appeal this Court's dismissal of their claims with the knowledge that any effort to revive the claims on appeal was likely futile on mootness grounds, and also the apparent intent to use the pendency of that futile appeal simply and solely to seek vacatur of this Court's order and opinion.  The near certainty of vacatur plainly incentivizes such improper gamesmanship under these circumstances, when the States' strategic retreat from their prior position on mootness would be better interpreted as their having "voluntarily forfeited [their] legal remedy by the ordinary process[] of appeal . . . thereby surrendering [their] claim to the equitable remedy of vacatur."  *U.S. Bancorp*, 513 U.S. at 25; *see also id.* ("The denial of vacatur is merely one application of the principle that '[a] suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks.'" (quoting *Sanders v. United States*, 373 U.S. 1, 17 (1963))).

Second, the States are not harmed in any cognizable way from the maintenance of this Court's decision dismissing their claims for lack of Article III standing.  Again, the premise of a *Munsingwear* vacatur is that a litigant may unfairly suffer adverse "legal consequences" from "a judgment[] unreviewable because of mootness[.]" *Munsingwear*, 340 U.S. at 41.  But "a jurisdictional dismissal does not involve an adjudication on the merits," and, therefore, "it will not bar relitigation of the cause of action originally asserted[.]"  *Nat'l Ass'n of Home Builders v. EPA*, 786 F.3d 34, 41 (D.C. Cir. 2015) (internal quotation marks and citation omitted).  Indeed, the States expressly conceded in their brief to the Circuit in support of the motion for vacatur that

17

this Court's decision "does not have preclusive effect on any other litigation[.]"  (Pls.'
Vacatur Reply at 4.)  Nor is it sufficiently prejudicial that a district court's opinion
might be persuasive to other courts faced with similar issues (*see* Pls.' Vacatur Mot. at
6); otherwise, *every* district court decision could be said to cause a harm that warrants
vacatur—a result that the Supreme Court has eschewed and that numerous other courts
have firmly rejected.  *See, e.g.*, *Democratic Exec. Comm. of Fla. v. Nat'l Republican
Senatorial Comm.*, 950 F.3d 790, 795 (11th Cir. 2020) ("[V]acatur of a prior stay-panel
opinion once a case becomes moot on appeal is inappropriate—precisely because that
stay-panel opinion *cannot* spawn binding legal consequences regarding the merits of the
case."); *Hassoun v. Searls*, 976 F.3d 121, 134 (2d Cir. 2020) (same); *cf. U.S. Bancorp*,
513 U.S. at 27 (acknowledging that "quite apart from any considerations of fairness to
the parties[,]" vacatur of a lower-court ruling "disturb[s] the orderly operation of the
federal judicial system[,]" and expressing the view "that the public interest requires
those demands [of orderly procedure] to be honored when they can").

It is also noteworthy that, under the circumstances presented here, vacatur of this
Court's judgment affords the States a windfall—*i.e.*, they have been granted the
requested nullification of an unfavorable district court opinion (the standard remedy for
a successful appellant) without actually having pursued a viable appeal and despite the
fact that the court of appeals appears to have agreed with the district court that there is
no subject-matter jurisdiction over their claims.  This Court is not aware of any prior
case in which a court of appeals has effectively upheld a lower court's dismissal order
(by requiring dismissal of a plaintiff's claims on jurisdictional grounds, albeit on
different grounds than the district court asserted) and yet vacated the district court's

order and opinion nonetheless.  And the danger of this odd outcome appears to have been presaged by the Supreme Court itself, when it emphasized in *U.S. Bancorp* that "Congress has prescribed a primary route, by appeal as of right and certiorari, through which parties may seek relief from the legal consequences of judicial judgments[,]" and that it threatens "orderly operation of the federal judicial system" to routinely "allow a party who steps off the statutory path to employ the secondary remedy of vacatur as a refined form of collateral attack on the judgment[.]"  513 U.S. at 27.

*       *       *

In conclusion, this matter is now on remand from the D.C. Circuit's vacatur of this Court's prior dismissal order and opinion, and the point of this Memorandum Opinion is to make clear, for the record, that the mootness question was very much at issue when the States' claims concerning the rescinded GE Rule were before this Court for resolution.  Having lost the case on an alternative basis, it appears that the States have now managed to engineer vacatur of this Court's dismissal order and opinion through the backdoor of requesting vacatur on mootness grounds, in the context of a consented-to voluntary dismissal of their futile appeal prior to a decision of the Circuit regarding the merits of any appellate issue, including mootness.  Unfortunately, the Special Panel's application of the Circuit's vacatur practice under these circumstances blesses such obvious maneuvering, and it also casts doubt upon a district court's ability to dismiss claims conclusively on an alternative jurisdictional ground when a potential mootness problem looms, thereby complicating that court's considerations regarding how best to deploy its limited resources when such circumstances arise.  Indeed, when mootness concerns are credibly raised while a case is at the district court level, why

would any rational district judge accede to the plaintiff's demand that the court devote its time to issuing a ruling in the case, if that same plaintiff can later insist that the district court's conclusions should be summarily vacated on grounds that the plaintiff previously disclaimed if it turns out that the district court has ruled against them?

The accompanying Order is issued in the wake of the Special Panel's vacatur of this Court's prior order dismissing the States' legal claims for lack of Article III standing, and it dismisses the States' legal claims on mootness grounds, as the Special Panel has required.  But, for the reasons explained herein, this Court respectfully submits that neither the equities nor standard principles of appellate practice (as the Supreme Court has articulated and refined them) requires this result.


DATE:  December 29, 2020          *Ketanji Brown Jackson*
                                  KETANJI BROWN JACKSON
                                  United States District Judge